## CRAVENER v. BOWSER.

A written contract for the purchase of land, in part executed by entry and improvements made, cannot be rescinded by a verbal agreement and surrender of the instrument; the vendee remaining in possession under a verbal agreement to occupy as tenant.

And an entry by one having the better title with the consent of the vendee continuing in possession under such agreement, and with notice thereof, is not subject to the rule which estops one entering by collusion with a tenant, from setting up an adverse title against the landlord.

In error from the Common Pleas of Armstrong county.

*Oct.* 23. The defendant in error, in 1804 or 1805, entered upon, and settled a tract of land, of which the lines were marked by him. This land had been previously surveyed under a warrant, and the title of the warrantee was vested in Cravener. About the year 1816, Bowser, by written articles, sold one-half of the land to one Flanner, who entered, cleared, and cultivated it. It was proved by Flanner that after he had been in possession some time, he heard of the elder title, and in consequence threw up his bargain with Bowser, by a surrender of the article and parol agreement to become his tenant at a rent of one-third of the crop. That while in possession as tenant, Cravener entered and occupied the house with him, telling him Bowser had no title, and he need not pay rent. Whether this entry was before or after the lapse of twenty-one years from the date of Bowser's first entry, was a subject of dispute, the evidence being contradictory. Cravener gave some evidence of a purchase of the whole tract from Bowser, subsequent to his entry. Bowser contended and gave evidence that the purchase was but of the moiety not previously conveyed to Flanner.

The only question raised in this court was on the point, whether Cravener, having entered by consent and agreement with Flanner, was as to that moiety estopped denying the title of Flanner's vendor or landlord.

The court (WHITE, P. J.) instructed the jury, that if Bowser had retained possession twenty-one years before the entry of Cravener, he had acquired a perfect title as against the elder warrantee, and that if, when Cravener entered with the assent of Flanner, the latter · was the tenant of Bowser, Cravener was estopped denying the title of the landlord, unless he had in fact purchased the whole of Bowser's interest.

This point in the charge, and the instruction, that after the rescission of the contract between Flanner and Bowser the former stood in the relation of tenant to the latter, were the errors assigned.

*Buffington*, for plaintiff in error.—It cannot be that the owner of the land who obtains peaceable possession from the tenant of his disseisor, before the statute has barred his right, continues ever afterwards to hold adversely to himself for the benefit of the disseisor, and thus bars his own right by lapse of time. If this be the case, the right of entry can never be safely exercised where a tenant is in possession; it would be but a trap to deceive; and ejectment must always be resorted to.

*Phelps*, contrà.—The plaintiff's title was perfected by possession before Cravener's entry, and the rule that such a title will defeat an elder title, not only to the improved land, but to all enclosed within the marked lines, is settled beyond dispute in this state. This possession was completed and perfected by that of Flanner, which is to be added to his, Overfield *v.* Christie, 7 Serg. & Rawle, 177; in which case there is no dispute as to the time of possession. But the entry of Cravener, having the better title, is that which rendered the evidence as to the time doubtful. If, however, it be settled, as it is contended to be, that by his collusion or agreement with the tenant, his entry and possession was, as regards the landlord, that of the tenant, we may add his possession to the previous undisputed one of Bowser, and thus perfect his title. The cases supporting this doctrine are, Rankin *v.* Tenbrook, 5 Watts, 386; Turly *v.* Rodgers, 1 A. K. Marsh. 245; Stewart *v.* Roderick, 4 Watts & Serg. 188; Jackson *v.* Harder, 4 Johns. Rep. 202; Jackson *v.* Walker, 7 Cowen, 642. The parol rescission, coupled with a destruction of the document on which the title was based, and the subsequent lease and occupation under it, was a destruction of the title, and that is out of the case. 9 Watts, 50; 3 Watts & Serg. 432.

*Oct.* 26. COULTER, J., (after stating the case, and that Bowser, if in possession for twenty-one years, claiming title to the extent of his designated boundaries, and exercising acts of ownership, would

have acquired a better title than the warrantee.)—The court instructed the jury, that if Cravener had purchased the whole of Bowser's interest, under circumstances which would take the case out of the statute of frauds and perjuries, the plaintiff would not be entitled to recover. It is not, however, in relation to that aspect of the cause that it has been brought into this court. The errors assigned, and the questions argued here, have relation to the character which Bowser, Flanner, and Cravener held and hold to each other; in other words, whether Flanner is to be regarded as the tenant of Bowser, and Cravener as entering under him and holding the same relation, or whether Bowser is still to be considered as the vendor, and Flanner as his vendee. The court instructed the jury thus: "If the fact is, that Cravener came into possession under Bowser's tenant, he is in the same situation, and the law regards him as Bowser's tenant, and he must surrender the possession to him when called on for that purpose, and this, whether Bowser has a title or not, and the defendant cannot retain possession, although he may have purchased a better title," and this instruction is assigned for error. As an abstract proposition the doctrine of the court is unquestionable law. The error consists in the application of it to the facts of this case.

The fidelity of a tenant to his landlord, which our law requires, is not merely a shadow and remnant of the ancient feudal fealty, but is essentially connected with the observance of good faith in contracts, and the maintenance of that confidence and trust which is essential to a wholesome state of society. But while the principle is thus highly valued, care must be taken that it is not permitted to overcome the principles of law, equal and perhaps superior in solemnity and importance. The statute of frauds and perjuries requires all sales and purchases of real estate to be in writing. This statute was demanded, and has been sanctioned by the experience of the sages of the law. It has been found essential to the interests of society by removing temptations to perjury, and rendering titles to real estate more abiding and secure than if they depended on the fluctuating memory of casual witnesses. Saving only those excepted cases which the law has allowed to escape from its provisions, the statute must be preserved. By the article of agreement already referred to, between Bowser and Flanner, the latter acquired an estate in the land. He entered in pursuance of the article, made valuable improvements, and held it as his own sixteen or seventeen years. This estate he could not divest or alienate without a contract in writing, unless the transaction was within the saving of

some of the exceptions ; that, however, is not pretended ; Bowser did not take possession, nor was there any one act present, and accompanying the rescission of the contract, upon which the mind can fix as tending to take the agreement out of the statute.  It was a naked parol agreement to rescind.  A contract in writing, in relation to personal estate or the payment of money, may be discharged in equity by parol, but a contract for the sale of real estate cannot.  Goucher *v.* Martin, 9 Watts, 106.  In that case, Mr. Justice Rogers, who delivered the opinion of the court, says, " but where the contract is in part executed, and the party becomes seised of an estate in the land, I hold it to be a very clear proposition that he cannot be deprived of his estate, on the pretext that the agreement had been waived by a parol contract."  There were, in this case, all the ingredients indicated as necessary by his honour the judge; there was more, there was the long possession to give weight and permanence to the estate acquired by Flanner.  No case, I apprehend, can be found in the books, where the vendee was in actual possession, had paid purchase money and made valuable improvements, where a rescission by parol was adjudged sufficient to divest him of his estate, and revest it in the vendor.  Can the act of rescission transfer the title or estate ?  It is a mere destruction of the written evidence of the vendee's right to demand a conveyance, upon full performance, but does not the abiding evidence of the possession and improvements remain ?  What difference in principle can exist in the mode of transferring a legal and an equitable estate ? yet what lawyer would pretend that a legal estate, after it had vested by deed, could be transferred to the vendor by a destruction of the deed ?  There must be some vehicle to carry out the estate from the owner, and if it is not done by writing, it cannot be done by a naked parol agreement to rescind or destroy the written evidence of his title.  A contrary doctrine would open a door for, and let loose upon society the emphatic mischief which the statute of frauds was intended to shut out for ever.

If, then, the naked parol agreement to rescind the contract *in* writing was rendered void by the statute of frauds, the loose conversation about paying rent, and Flanner's remaining in possession as Bowser's tenant, must fall with the foundation on which they rested, and Bowser and Flanner continue to hold to each other the relation of vendor and vendee.

There was error in the instruction of the court.  The judgment is, therefore, reversed, and a *venire de novo* awarded.