# Goucher *against* Martin.

Where a vendee is in possession of land, under a written contract of sale, having paid in part therefor, the vendor cannot recover it back, in ejectment, upon proving a parol contract to resell it to him on different terms, and the entry of satisfaction of a judgment against the vendee, in part payment to him of such resale.

To take a case out of the statute of frauds, it is indispensable that the parol contract should be definite in its terms, and unequivocally established; otherwise specific performance will not be decreed.

Although, in equity, an agreement as to personalty may be discharged by parol, yet that principle does not apply to contracts of sale of real interests.

ERROR to the common pleas of *Fayette* county.

Benjamin Martin against John Goucher. Ejectment for a tract of land.

On the 25th of June 1835, the parties to this suit entered into a written agreement, by which the plaintiff sold the land in dispute to the defendant, for the consideration of 2340 dollars, in six equal and annual payments. In the month of September 1837, when the defendant had made the first two payments, a transaction happened between the parties, by which the plaintiff alleged that he had repurchased the land from the defendant by parol, and had entered satisfaction on a judgment, which the defendant owed him, of 1000 dollars, in pursuance of the agreement of resale. There was a good deal of parol evidence given to establish the fact, that the parol contract of repurchase was made.

The court below thus stated the case and instructed the jury.

"B. Martin had sold the land in dispute to the defendant; the deed to be made when the whole money was paid. A parol agreement was made, as was alleged, between Martin and Goucher, by which Goucher agreed to sell back the land to Martin, and, as Martin alleged, in pursuance of that agreement, they came together

[Goucher v. Martin.]

to the prothonotary's office, and Martin entered satisfaction on a judgment he had against Goucher for 1000 dollars; this, as alleged, was to be in part of the purchase-money to be paid by Martin to Goucher, and together with balance of purchase-money due. by Goucher to Martin, would be in full, or nearly so, of the amount to be paid by Martin to Goucher."

"The court instructed the jury that Martin, having the legal title, stood in a better condition than a purchaser, who had only an equity—that at law he would be entitled to recover, and the defendant would be obliged to resort to a court of equity to enforce his claims—that the defendant's position was that of a plaintiff in equity claiming a specific performance against the holder of the legal title, and if he could not succeed there, neither could he defend here in this suit. That if the jury believed the testimony of the plaintiff, the statute of frauds interposed no bar to his recovery."

*Howell* and *Biddle*, for plaintiff in error, cited and relied upon the *Statute of Frauds and Perjuries*; *Purd. Dig.* 770; 3 *Watts* 37; 2 *Rawle* 55; 3 *Watts* 255; 6 *Watts* 464; 5 *Watts* 150; 4 *Watts* 289; 1 *Whart.* 301; 4 *Rawle* 411; 1 *Watts* 392.

*Veech* and *Dawson*, for defendant in error, contended that the plaintiff, having the legal title, was entitled to recover, unless the defendant had such a superior equity as would enable him to insist upon specific performance. 1 *Rawle* 376; 4 *Bin.* 43. Defendant's title could not be heard in a court of law, 1 *Peters's C. C. Rep.* 429; 2 *Johns. Cas.* 321; 9 *Johns.* 60. That a written agreement may be discharged by parol, 1 *Vernon* 240; 4 *Vez.* 848; 2 *Vez.* 299; 1 *Bro.* 338; 2 *Johns. Chan. Rep.* 416; *Amer. Chan. Dig.* 210; 2 *Story's Eq.* 79, 769; *Sieger* 109, 114; 17 *Vez.* 356; *Sug. Vend.* 138.

The opinion of the court was delivered by

Rogers, J.—It is a general rule, that no estate or interest in land shall pass but by deed, or some instrument in writing, signed by the parties; and it is immaterial whether the interest be legal or equitable, as an equitable interest is an interest in land which comes within the words and spirit of the statute of frauds. And what is this but a resale of the premises by Goucher to Martin by parol, unaccompanied by any act which, according to the decisions of the court, takes it out of the operation of the statute. Martin sold the property to Goucher by an article of agreement dated the 25th of June 1835, in which, in consideration of the payment of 2340 dollars, to be paid in the manner therein stipulated, he agrees to give Goucher peaceable possession on the 1st of April next thereafter, and a deed of conveyance for the premises after the consideration has been fully paid. Goucher took possession and paid at least two of the instalments. Martin was the owner of the legal and

[Goucher v. Martin.]

Goucher of the equitable title, with the right to demand a conveyance of the legal title, upon payment of the purchase-money, when due. The case is, therefore, clearly within the operation of the act, and no contract by parol will pass the interest Goucher has acquired in the land. It appears that Goucher and Radcliff were in treaty for the sale of the land, but not being able to agree, Martin asked Goucher whether he was willing to let him have the farm on the same terms; to which Goucher having assented, the witness considered the place as belonging to Martin. A few days afterwards, viz the 18th of December, Martin inquired of Radcliff what he was to give for the property, and upon his replying that he was to give 20 dollars an acre, he declared he would have nothing further to do with it; that he would give no such price for it; that all he wanted was his money; that Radcliff might deal with Goucher for it, and that the 1000 dollars judgment on the docket must be paid in specie, and the balance he would take in any kind of current paper, paid between then and the 1st of April. He said they should meet on the 23d of December, and the parties, having met according to appointment, Goucher and Radcliff attempted to make a bargain for the property; but upon Martin declaring that all the money which Goucher owed him must be paid on the 25th, in such paper as would pass at the Brownsville Bank at par, all further negotiation was broken off by Radcliff, who declared he would have nothing further to do with the purchase. This appears in the testimony of Radcliff, who was the plaintiff's witness, and shows that, although there was a parol contract for the purchase of the land, yet that the contract was rescinded by Martin; that this was acquiesced in by Goucher, and that all parties, at the subsequent meeting, acted on the idea that it was rescinded. . The declaration of Goucher to other witnesses, that he believed he had sold to Martin, is properly referable to the parol contract as proved by Radcliff, and afterwards rescinded. Throwing out of view this part of the testimony, it is difficult to perceive the semblance of proof of any subsisting contract of sale between Goucher and Martin. If any such contract was made, it must have been after the period to which I have referred, viz. sometime about the 27th of December 1837. On that day Martin and Goucher were together, went to Union Town together, and on the same day Martin entered satisfaction on the judgment against Goucher, he remaining at the door of the prothonotary's office, holding the horses of himself and Martin, and Martin taking a memorandum of the amount of the debt and interest due on the judgment and costs. Now, although all this is evidence, as being part of the *res gesta*, and especially connected with the fact, that a few days before Goucher had no funds with which to pay the judgment, yet we are still left to conjecture, to a remote, uncertain and doubtful inference, that the satisfaction was connected with an agreement for sale of the land; and as to the terms of the agreement, the amount of the purchase-money

[Goucher v. Martin.]

to be paid, the time when the possession was to be delivered, there is no proof or semblance of proof whatever. But to take a case out of the statute, upon the ground of a parol contract, it is indispensable that the contract should be established by clear and unequivocal proof, and that it should be definite and clear in all its terms. If the terms are uncertain or ambiguous, or are not proved by clear and satisfactory proof, a specific performance will not be decreed. A court of equity will not, nor should a jury in this state be permitted to act upon conjecture, or uncertain and inconclusive inferences. The very object of the statute is to prevent the divesture of a title to real estate, equitable or legal, by the introduction of loose and indeterminate proof of a contract which the law requires should be made in the most solemn form. It is impossible to say what was the precise contract, if any, or what was the nature and extent of its limitations, its terms and conditions. Now is there any necessity that we should relax the strict proof ordinarily required, because of such a part performance of the contract as would render it against equity, not to decree a specific performance? Payment of part or of the whole of the purchase-money is not such a part performance of a contract as takes the case out of the statute. Nor can the entry of satisfaction on a judgment, even if done in part payment for a tract of land, have any greater effect. The remedy for the party injured is to have the entry of satisfaction vacated by an application to the court of common pleas of the proper county. The remedy is just as efficient as the party has who has paid part or the whole of his purchase-money. In either case he may be injured by the refusal of the party in good faith to perform his contract, but this consideration will not induce the court to interfere with the statute. In the one case the money may be repaid, and in that way a full indemnity given, and in the other the entry of satisfaction may be stricken out, and then the parties are just as they were before the contract. It does not put the party, in either case, necessarily in such a situation as that it is a fraud upon him, unless the agreement be performed. In Haslett *v.* Haslett, 6 *Watts* 464, it is held, that an exclusive possession is an indispensable ingredient in a case for a specific performance of a parol contract for the sale of lands. He must prove that he has taken possession in consequence, and in pursuance, of the contract. In order to make the acts such as a court of equity will decree part performance of a contract within the statute, it is essential that it should clearly appear to be done, solely with the view to the contract being performed. For, if they be acts which might have been done with other views, they will not take the case out of the statute. 1 *Johns. Chan. Rep.* 149, 283; 1 *Fonb. Eq.* 8, note. The mere possession of the land contracted for, will not be deemed a part performance, if it be obtained wrongfully by the party, or if it be wholly independent of the contract. Thus, if a vendee enter into the possession not under the contract, but in violation of it as

IX.—K*

[Goucher v. Martin.]

a trespasser, the case is not taken out of the statute. And is not the plaintiff placed in this category? For it is difficult to believe that the timber which was cut by order of Martin was a taking of possession, in pursuance of the alleged contract. It would seem to have been a trespass without the knowledge of Goucher, for as soon as he was informed of it, so far from approving of it, he threatened to make Martin pay for it. It is, to say the least of it, not such proof of part performance as the law requires. The plaintiff has the legal title, and at law, has the right to the possession. But a court of chancery would enjoin him from proceeding at law, on the production of an equitable title, founded on an article of agreement, possession taken in pursuance thereof, and payment of part of the purchase-money. Nor would they refuse relief upon the allegation of a parol contract of repurchase, unless there was clear and determinate proof as to its terms and conditions; for where there is no evidence of part performance, courts of equity are as much bound by the statute, as courts of common law, and are not at liberty to disregard its provisions. That they interfere with cases embraced by the statute is true: but this is done, not with the arbitrary notion that they can dispense with it, but under certain precise and definite rules, accurately defined, by which it is supposed that equities, subservient to the object of the statute, and collateral and independent of it, may be administered. Whether this branch of equity jurisprudence has produced all the good effects intended, it is unnecessary now to inquire, but this is certain, that the doctrine, for which the plaintiff contends, would, in effect, repeal the statute, so far as concerns vendors and vendees, where the vendee retains the legal title. If at any time, however distant, the vendor could set up a parol contract of repurchase, it would introduce the very mischief which the statute was intended to prevent. The object was to prevent the fraudulently setting up of pretended agreements, and then supporting them by perjury. There is also a manifest policy in reducing such contracts to writing, as otherwise, from the imperfection of memory, and the honest mistakes of witnesses, it must often happen, either that the contract is incapable of full proof, or is unintentionally varied from its precise original terms. And these observations apply as well to equitable, as to legal estates, and particularly in Pennsylvania, where we have no adequate means of compelling the conveyance of a legal title, and where, for this reason, equitable titles serve most, if not all, the purposes of legal titles.

A written agreement may be waived and discharged by parol. But in Burthouse v. Crossly, 2 *Eq. Cas. Ab.* 26, the Chancellor said, "That he would not say a contract in writing could not be waived by parol, yet he should expect, in such a case, very clear proof; and the proof in that case he thought insufficient to discharge a contract in writing; and observed that the statute of frauds and perjuries requires that all contracts and agreements

[Goucher v. Martin.]

concerning lands, should be in writing. Now, an agreement to waive a contract of purchase, is as much an agreement concerning land as the original contract." In Gera *v.* Salisbury, 1 *Ver.* 240, the single point was, whether an agreement made since the statute of frauds and perjuries, might be discharged by parol? And Lord Keeper held it might, and therefore dismissed the bill which was brought to have the agreement executed in specie. In both the cases cited, it was a mere agreement to convey without any act done, and even then, notwithstanding the case in 1 *Ves.* was cited, the Chancellor doubted, (inasmuch as it was a contract concerning land,) whether it could be waived by parol. But where the contract is in part executed, and the party becomes seised of an estate in the land, I hold it to be a very clear proposition, that he can not be deprived of his estate, on the pretext that the agreement had been waived by a parol contract. And even if this should be held to be the law, a Chancellor would require the most clear and satisfactory proof of the contract, and of all its terms and limitations. But here the point does not arise, for there is no proof whatever, of any waiver of the original bargain, but the case is presented on the fact of a contract of sale, and a repurchase of the land on different terms and conditions, from the original agreement. At law, it is a principle established in the Countess of Rutland's case, 5 *Co.* 26, *b*, that every contract or agreement ought to be dissolved by matter of as high a nature as the first deed, *nihil tam conveniens est naturali æquitate, unumquodque dissolvi eo ligamine quo ligatum est.* But in equity an agreement may be discharged by parol. And perhaps this is universally true, as to an agreement concerning personal estate, but the principle does not apply (except, perhaps, in certain cases) to contracts of bargain and sale of interests in real estate.

Judgment reversed, and a *venire de novo* awarded.