# Boyce *against* M'Culloch.

A written contract for the purchase and sale of land may be rescinded by a subsequent parol agreement of the parties, so that the vendee cannot afterwards enforce a specific performance of the contract by an action of ejectment against a subsequent purchaser from the vendor.

ERROR to the Common Pleas of *Centre* county.

Elijah Boyce against George M'Culloch, Anthony Shorb, John Lyon, David Stewart, and William M. Lyon.

This was an action of ejectment brought to enforce the specific performance of a contract made 11th of March 1829, between the plaintiff, and Gilbert S. Loyd, by which Loyd covenanted to sell and convey the land in controversy to the plaintiff, in consideration of $1 per acre, payable in instalments of $20 per annum, the last of which fell due in 1834. There was a receipt upon the agreement for $18: it was recorded on the 12th of June 1833. After the plaintiff had given the agreement in evidence, he proved that in 1835 or 1836 he tendered to Loyd the whole amount of the purchase money and interest; and upon the trial, he brought the money into court. He proved also, that he built a house upon the land, and cleared about half an acre of it some distance from the house.

The defence was, that this contract was rescinded by parol, and in support of it the defendants called William Copely, who testified as follows:—"About 1829, Boyce and Loyd came into the store and got into conversation about land. Boyce said he was not satisfied with the bargain they had made for the land, and he would rather break it, on account of a strip of land that run between his place and the piece he had bought. He said he would rather give up the bargain. ' Loyd said he was satisfied to take it back, if he was not satisfied to keep it. This was all that

I heard. They both appeared to be satisfied, and parted. It appeared to be a matter of indifference to both."

The defendants then gave in evidence a deed of conveyance for the same land, by Gilbert S. Loyd to William Mitchell, George M'Culloch, and James Dixon, dated the 7th April 1832; recorded 24th January 1838, and several mesne conveyances to the defendants.

The defendants requested the court to charge the jury:

1. That there may be a parol waiver of a written executory contract for the sale of land; and if the jury believe the testimony of William Copely, that Boyce gave up the bargain in 1829, then the plaintiff cannot recover.

2. That the delay of Boyce in tendering the purchase money until the fall of 1835 or 1836, is such a backwardness in the performance of his part of the contract that he cannot recover in this suit.

3. As the defendants have the legal title, and the plaintiff only an equity, this ejectment is like a bill for specific performance; that the plaintiff is obliged to make out such a case as would obtain a decree of a chancellor in his favour, to enable him to recover in this suit.

4. That the possession of Boyce was not such a possession as can, in this case, have any legal effect in his favour.

The court thus charged the jury:

WOODWARD, President.—The defendants' third point is answered affirmatively. His second point is denied; for if the jury believe that Boyce took possession of the land under the article, and in the fall of 1835 or 1836 tendered to Loyd the whole amount of purchase money and interest due on the contract, and now brings that amount into court, the time suffered by the parties to elapse is compensated by the interest, and does not deprive Boyce of his action. A chancellor would, notwithstanding the lapse of time, decree that Loyd should receive the money and convey the title to Boyce; and what he would do, we in effect accomplish by this action.

But do the defendants stand in the same relation to Boyce that Loyd would? They do; because they purchased from Loyd; and Boyce having recorded his articles before the defendants recorded their deed, they are not in the situation of purchasers without notice of Boyce's equities; and beside, if the evidence of Boyce's possession be believed, that was notice to the defendants of the plaintiff's equities. The defendants stand, therefore, in the same situation Loyd would have occupied if he had not conveyed. They are trustees of the legal title for the use of Boyce, and may be compelled to convey in the same manner that Loyd might be. This action has the effect of a decree of conveyance, by letting the plaintiff into possession as if he already had the legal title.

But it is said that Boyce released and surrendered his equities;

[Boyce v. M'Culloch.]

and to this it is objected, that the release, if any there were, was by parol, and void by reason of the statute for the prevention of frauds and perjuries. It is settled by the case of *Goucher* v. *Martin,* (9 *Watts* 106), that when a purchaser of land by articles of agreement is in possession under the articles, having paid part of the purchase money, he cannot be turned out by the vendor on proof of parol repurchase on different terms; and it is insisted that this case rules the question presented here.

We do not consider that that case rules the present question; and we believe that a contract for the sale of land not further executed than this was in 1829, (the date of the alleged release), may be waived and surrendered by parol; and that such parol waiver is not within the statute of frauds and perjuries. But such waiver of the contract must be indicated by more decisive circumstances, such as the cancellation or giving up of the articles of agreement, or the removing from the possession in pursuance of the parol agreement; and there must be clear and distinct proof of the contract of release. Here there was no cancellation or surrender of the articles; no removing from the possession in pursuance of the parol agreement; and the proof of any contract is highly unsatisfactory. The only witness who speaks of it is William Copely. Now what does it prove more than a mutual profession of willingness to do that which there is no evidence they ever did do—give up and annul the contract? If Stine is believed, we find Boyce in possession, with half an acre cleared, a year after the contract was dated; and his whole conduct indicates an intention to retain, rather than to surrender the purchase. Giving to the testimony of Copely its full effect, there is nothing in it, which, in connection with the other facts in evidence, should deprive Boyce of his purchase. And, whilst we say Boyce might have surrendered his purchase by parol, we also say that there is no such evidence before you as would justify you in finding that he had made such a surrender; and if you find that he has performed or offered to perform the conditions on which he was to receive a title under the articles of agreement, your verdict should be for him.

*Blanchard,* for plaintiff in error. This action of ejectment is but a bill for specific performance. 4 *Rawle* 38; 1 *Watts* 408. A decree of specific performance is a matter of grace, and will not be made in a case which presents circumstances like the present. 8 *Serg. & Rawle* 493; 2 *Watts* 148, 275; 1 *Johns. Ch.* 379. The vendee delayed to execute the contract, on his part, for seven years, during which time the land was rising in price; and not until after a sale was made to another person, in consequence of his parol relinquishment of his contract, does he make any tender, or show any disposition to enforce it. 9 *Watts* 50.

[Boyce *v.* M'Culloch.]

*Hale*, for defendant in error, cited ·9 *Watts* 106, as ruling the principle of this case. There is no evidence having a single feature of an agreement to rescind the contract. The parties talked about it, and came to no conclusion; the agreement was not cancelled; the purchase money paid was not refunded; the possession of the purchaser was not abandoned; his improvements were not paid for; and his recovery in this action is resisted by those who claim under a conveyance not recorded for five years after the plaintiff recorded his agreement, and for at least two years after he had tendered the whole amount of the purchase money. 8 *Watts* 379; 10 *Serg. & Rawle* 43; 2 *Serg. & Rawle* 354. In what, then, has the plaintiff been in default? That he has not tendered his purchase money until one year after it was due! Clearly this will not prejudice his right; it is compensated by the interest. 7 *Watts* 43.

The opinion of the Court was delivered by

KENNEDY, J. — In the various matters assigned for error, we are unable to perceive anything exceptionable, unless it be that part of the court's charge to the jury, where the learned Judge notices the first point submitted by the defendants. The Judge, after stating the proposition of the defendants in this point, and the objection made to it on behalf of the plaintiff by his counsel, who cited *Goucher* v. *Martin*, (9 *Watts* 106), in support of the same, proceeds to instruct the jury, by saying, "We do not consider that that case rules the present question; and we believe that a contract for the sale of land, not further executed than this was, in 1829, (the date of the alleged release), may be waived and surrendered by parol; and that such parol waiver is not within the statute of frauds and perjuries. But such waiver of the contract *must be indicated by more decisive circumstances;* such as the *cancellation* or *giving up* of the *articles of agreement,* or the *removing from the possession, in pursuance of the parol agreement;* and there must be clear and distinct proof of the contract of release. Here there was *no surrender* or *cancellation* of the articles — *no removing from the possession, in pursuance of the parol agreement;* and the proof of any contract is highly unsatisfactory."

We think that the learned Judge went rather too far in this instruction to the jury. For although the articles of agreement were not cancelled or given up, or the possession of the land surrendered, in pursuance of the parol agreement; yet if, from what passed between the parties, it was their understanding that it was not the wish of Boyce that the contract for the purchase of the land should be carried into execution, and especially so if it was because, as he said, that it did not adjoin his other land, as he believed it did, when he agreed for the purchase of it, and his request, for this reason, not to carry the agreement into effect,

was distinctly assented to by Loyd; and Loyd, confiding in the understanding thus produced by parol between them, afterwards sold and conveyed the land to M'Culloch and others, it would, in our apprehension, be sufficient to defeat the equity that Boyce might otherwise have, to call upon the defendants, in a court of equity, as the assignees of Loyd, to convey the land to him which he contracted for the purchase of from Loyd. For unless equity would enable Boyce, under these circumstances, to demand and have from the defendants a conveyance of the land, he would not be entitled to recover it in this action; since it is to be regarded as a substitute for a bill in equity, to compel a specific performance of the contract. If he be entitled to a specific performance, equity will consider that as already done which ought to be done, and the plaintiff below accordingly invested with the legal title, and by virtue thereof entitled to recover the land. No doubt, if evidence had been given, showing that the articles of agreement had been cancelled, or actually given up for that purpose, or such possession as Boyce had, had been surrendered, in pursuance of the agreement to rescind the articles, it would have made the case perfectly clear for the defendants; because it might have been considered, even at law, as amounting to an actual rescission of the agreement contained in the articles. Though less than that might not strictly be sufficient to prevent a recovery in a personal action for a non-fulfilment of the articles, yet less may be quite sufficient in equity to prevent a specific performance thereof. Accordingly, Chancellor Kent, in *Stevens* v. *Cooper*, (1 *Johns. Ch. Rep.* 429, 430), in giving his opinion, and remarking upon the principle that an agreement in writing concerning lands may be discharged by parol, says, that "the evidence in such cases is good only as a defence to a bill for a specific performance; but is totally inadmissible, at law or equity, as a ground to compel a performance in specie." See also *Gorman* v. *Salisbury*, (1 *Vern.* 240). Also in *Bell* v. *Howard*, (9 *Mod.* 362.) Lord Hardwicke is reported to have said, that it was certain that an interest in land could not be parted with, or waived by naked parol, without writing; yet articles might by parol be so far waived, that if the party came into equity for a specific execution, such parol waiver would rebut the equity which the party before had, and prevent the court from executing them specifically. See likewise *The Earl of Anglesea* v. *Annesley*, (4 *Bro. P. C.* 421). So in *Price* v. *Dyer*, (17 *Vez.* 363, 364), where the effect of a parol waiver of a written agreement concerning land was very much discussed. Sir William Grant, Master of the Rolls, though he did not consider it necessary to decide the point in that case, because not raised by the evidence fairly, observed that, as then advised, he was inclined to think that a written agreement might be so far waived by parol, that the court would refuse the interposition of its equitable jurisdiction to enforce it. Chancellor

Kent also, in *Botsford* v. *Burr*, (2 *Johns. Ch. Rep.* 416), says there may be a parol waiver even of a written agreement; for which he cites *Price* v. *Dyer.* Though it may be proper to observe that Mr Sugden, in his very excellent treatise on the law of vendors and purchasers of real estates, page 150, (9th London edition), seems to think it questionable whether an absolute parol discharge of a written agreement, not followed by any other agreement upon which the parties have acted, can be set up even as a defence in equity. It may be questionable, perhaps, as Mr Sugden seems to think it is, whether, in general, such parol discharge of a written agreement, without more, would even in equity be a good defence to a specific performance of the written agreement, on a bill between the parties to it. But it is conceived such parol discharge would be a good defence for a third person, who had, as in this case, subsequently become a purchaser of the land for a valuable consideration; possibly, too, upon the faith of the parol discharge of the first agreement, which, if the testimony of William Copely is credited, was made upon what might well be considered a good and binding consideration; that is, the mistake under which Boyce alleged he contracted for the purchase of the land, believing that it adjoined other land which he owned at the time, whereas he had discovered afterwards that such was not the fact. And if this misapprehension, on his part, was produced by the representation of Loyd, in making the written agreement, it may be that Loyd could not have enforced it; and seeing it was alleged as an excuse or reason by Boyce, for not wishing to carry his agreement into execution, it would seem to be inequitable to permit him, after Loyd had consented at his own solicitation, to discharge him from his contract, and after the land had risen greatly in value, to take it from those to whom Loyd subsequently sold and conveyed it. But if not purchased by the defendants on the faith of the parol discharge, they would appear to have a still stronger equity, and one which Loyd could not have claimed if he had been the defendant; which is, that they purchased the land of Loyd without any notice of Boyce's agreement for the purchase of it, either actual or constructive. For, it appears in the first place, by the evidence, that they purchased, paid their money, and received a deed of conveyance for the land, fourteen months before Boyce put his agreement upon record, so that they could not have had constructive notice from this source. Again, it would seem from the evidence, that Boyce had not such a possession of the land as would be equivalent to notice. In order that possession shall amount to notice, it must be a notorious and exclusive possession. According to the evidence given, it would appear that he cleared only about half an acre of the land, and cultivated it; that he also, according to the testimony of one witness, Samuel Stine, built a house upon this half acre; but according to

[Boyce v. M'Culloch.]

evidence of another witness for Boyce, Doctor Engles, the house stood 150 rods from the cleared half acre, and that he supposed the house was on the land in dispute. This was certainly very unsatisfactory evidence, to say the most of it. But by the terms of his agreement for the purchase of the land, it being all wood land, Loyd was to have the possession of it, notwithstanding the agreement for sale, until he cut and removed all the timber growing upon it, and accordingly did retain the possession for that purpose, at least, until he sold and conveyed it, timber and all, to the defendants below. It would therefore seem, from the evidence, that Boyce never had any such distinct and exclusive possession as would be likely to come under the notice and observation of strangers or purchasers. And as to evidence being given on the trial of notice in fact to the defendants, before or at the time of their purchase of the land, there is none. We therefore think that under the particular circumstances of this case, there ought to be a new trial.

Judgment reversed, and *venire de novo* awarded.