(90 N. W. Rep. 804.)

---

## GEORGE MAHON *vs*. W. F. LEECH.

---

**Land Contract Extinguished by Parole.**

> The mutual rights and obligations of the parties to a written contract for the purchase and sale of real estate may be waived and the contract annulled and extinguished by parol.

**Specific Performance Denied.**

> A court of equity will not extend the extraordinary relief afforded by specific performance to a purchaser of real estate who has been grossly negligent of his rights or has abandoned his contract, where the vendor, induced by his action, has entered into obligations inconsistent with the performance of the contract, or where the application for relief is plainly induced by an increase in value of the premises accruing subsequent to a voluntary abandonment of the contract.

### Laches in Asserting Claim.

Upon a retrial in this court of an action for the speicfic performance of three certain contracts for the purchase and sale of farm lands upon what is known as the "crop-payment plan," in which the evidence establishes that the rights of the purchasers under said contracts were voluntarily and unconditionally relinquished and abandoned; that the possession of the premises was surrendered; that the vendor, in reliance upon such relinquishment and abandonment and surrender of possession, entered into possession, and thereafter transferred the title; that the same was thereafter occupied and cultivated by the vendor and his successors for a period of more than three years prior to the commencement of the action, all with the knowledge of, and without objection from, the other parties to the contracts; and that the controlling motive inducing the institution of the action was an increase in the value of the property accruing subsequent to its abandonment,—it is *held* that the trial court properly refused to decree a specific performance of the contracts.

Appeal from District Court, Cass County; *Pollock, J.*

Action by George Mahon, trustee, against W. F. Leech and others. Judgment for defendants. Plaintiff appeals. Affirmed.

*Morrill & Engerud,* for appellant.

Each land contract was a written contract which cannot be altered except by another written contract or by an executed oral agreement. §3936, Rev. Codes. *Foster* v. *Furlong,* 8 N. D. 282.

The contracts secured the payment of the purchase price by reserving title of the land in the vendors. The equitable title to the land was in the vendees and the vendor retained the legal right as security only for the purchase price. *Nearing* v. *Coop,* 6 N. D. 345; *Moen* v. *Lillesal,* 5 N. D. 327; Jones on Mtges. § § 226 and 1449; Pom. Eq. Jur. 105, 368, 1046, 1161, 1260 and 1261; *Bartz* v. *Paff,* 95 Wis. 848. The vendees had an estate in the land which could be sold. A mortgage of this interest could not be made except by writing. § 4699, Rev. Codes; *Wells* v. *Harber,* 56 Cal. 342; *Stoddard* v. *Hart,* 25 N. Y. 556. The trial court disregarded the judgment in the case of *Leech* v. *Clemenson.* This action commenced by Leech, the owner of the land, against the original vendees in these contracts of sale, sought to quiet title of plaintiffs. The defendants answered alleging an interest in the land by reason of these contracts of sale. Leech replied, admitting the contracts but claimed they were forfeited. The trial of the action was dismissed without prejudice. It was, therefore, competent to show by parol what was the exact question litigated and determined in that case. *Russell* v. *Place,* 94 U. S. 606; *Young* v. *Black,* 7 Cranch 565; *Steam Packet Co.* v. *Sickles,* 24 How 333; Herman on Estoppel, § § 211, 213, 216. Judgment was entered and no appeal was taken. The judgment was a conclusive adjudication that the contracts were still in force and had not been forfeited, cancelled or voluntarily surrendered, and was an absolute bar against the present claim. *Morrill* v. *Morrill,* 11

L. R. A. 155, and notes. *Howard* v. *Huron,* 5 S. D. 539; *Eakin* v. *McCraith,* 3 Pac. Rep. 838; *Cushing* v. *Edwards,* 25 N. W. Rep. 940; Herman on Estoppel, § § 107, 108 and 110; *Thompson* v. *Roberts,* 24 How. 233. A judgment concludes not only. as to matters actually litigated but as to matters which could and ought to have been litigated. *Enderlin State Bank* v. *Jennings,* 4 N. D. 228; 1 Herman on Estoppel, § § 51, 74, 90, 91, 99, 102, 111, 119, 121, 127. The vendee in the contract had a right to cease farming and to pay the balance of the purchase price. Ceasing to farm would give rise to a cause of action to foreclose the contracts, and nothing more. *Nearing* v. *Coop,* 6 N. D. 345; Pom. Eq. Jur. § § 1190, 1193 and 1219. The provision for absolute forfeiture by reason of any default in the contracts was void. § 4684, Rev. Codes; *Holridge* v. *Gillespie,* 2 John. Ch. 30; *Clark* v. *Henry,* 2 Cow. 324; *Niggler* v. *Maurin,* 24 N. W. Rep. 369; *Peugh* v. *David,* 96 U. S. 332; Pom. Eq. Jur. § § 963, 1193 and notes. There was no writing relinquishing or transferring to Leech the trust estate's equity in the lands. This equity was an estate in the land. § 3300, Rev. Codes; *Nearing* v. *Cooper,* 6 N. D. Rep. 345; *Moen* v. *Lillestad,* 5 N. D. Rep. 327; *Bartz* v. *Paff,* 69 N. W. Rep. 297; Pom. Eq. Jur. § § 105, 368, 372, 1261, 1406.

*Barnett & Reese* and *Jno. E. Greene* for respondents.

Any declaration made by the creditor to his debtor as a release of it and which the debtor acts upon to the material alteration of his position will operate as a release. 1 Beach Mod. L. Contr. 464; *Canal Co.* v. *Ray,* 101 U. S. 522; *Herzog* v. *Sawyer,* 61 Md. 344; *Fleming* v. *Gilbert,* 3 Johns. 528. A dismissal without prejudice would neither estop the plaintiff with regard to the introduction of testimony nor bar his right of action for the relief sought or any other relief affecting the property in question. *Gunn* v. *Peakes,* 36 Minn. 177; *Wanzer* v. *Self,* 30 O. St. 378; *Krutsinger* v. *Brown,* 72 Ind. 466; *N. P. Ry. Co.* v. *Ry. Co.,* 47 Fed. Rep. 536.

YOUNG, J. The plaintiff, in his capacity of trustee, and for the benefit of certain creditors of one G. A. Grover, an insolvent, seeks the specific performance of three certain contracts for the conveyance of real estate, which contracts constituted a part of the assets of the trust estate of said insolvent. The trial court found that all of the rights of Grover and all other persons in the contracts in question were wholly released and surrendered by a former trustee. Judgment was accordingly entered dismissing the action. Plaintiff has appealed from the judgment, and in a settled statement of case, containing all the evidence offered in the trial court, demands a review of the entire case in this court, under section 5630, Rev. Codes.

The facts which are material to a determination of this case may be stated as follows: On April 20, 1891, Addison Leech, Sr., now deceased, was the owner of four quarter sections of land sit-

uated in Cass county. On said date he entered into a written contract with one Peter Anderson for the sale of one of said quarter sections upon what is known as the "crop-payment plan." On June 15, 1891, he made a similar contract with Gilbert and Christian Clemenson for the sale of two quarter sections. And on March 21, 1892, he sold the remaining quarter section to Claus M. Olson. The aggregate purchase price of the four quarter sections was $16,489. The three contracts are identical, except as to dates, names of parties, description of property, and amount of purchase price. In each contract the purchaser agreed that he would pay all taxes assessed against the premises before they became delinquent, that during the life of the contract he would properly seed as much of the land as could profitably be sown, and that he would sow a specified number of acres of wheat each year. The purchase price, with annual interest thereon at the rate of 7 per cent., was to be paid by delivering one-half of the crop free of expense to the vendor within a reasonable time after threshing, which was to be completed by October 15th in each year. In consideration of the full and prompt performance of the covenants so made by the purchasers, the vendor agreed, upon a full and complete performance, to execute and deliver warranty deeds to the premises so agreed to be conveyed. The purchasers above named entered into possession under said contracts, and it is admitted that during the period of their occupancy, which extended to the fall of 1893, and included the delivery of the crop for that year, they fully complied with their covenants and agreements in said contracts contained. In the fall of 1893 all of said purchasers, by instruments in writing, assigned their interests in said contracts to one G. A. Grover, a merchant then doing business in Horace, in said county, which assignments were assented to by Addison Leech, Sr., by written indorsements upon the contracts. At the date of such assignments the total sum remaining unpaid on the three contracts was $12,388.55. There was also due at that time to Addison Leech, Sr., from the several purchasers, an aggregate additional sum of $3,486.58 for personal property which he had sold to them, which latter sum was evidenced by the separate notes of the purchasers, secured by their chattel mortgages. In consideration of the consent of Addison Leech, Sr., to his (Grover's) substitution to the rights of the original purchasers under the land contracts, he (Grover) assumed in writing the performance not only of the conditions of the contracts so assigned, but also the payment of the entire indebtedness of the original purchasers, which included both the land and personal property indebtedness above mentioned, amounting in all to the sum of $15,875.13. Thereafter Addison Leech, Sr., had nothing to do with the personal property covered by the chattel mortgages, and the same was apparently released to Grover and the mortgagors pursuant to an agreement made by the former at the time of his purchase of the interests of the latter in the land contracts.

By virtue of the assignments of the contracts, and his substitution thereunder, Grover took possession of the premises and farmed the same during the farming season of 1894, and in all things complied with the conditions of the contracts. In the fall of 1894 Grover became insolvent, and on December 19th of that year he entered into a written contract with one Albert E. Jones and a large number of his creditors whereby the said Jones was appointed trustee. In pursuance of such written contract, Grover transferred all of his property, both personal and real, including the contracts here in question, to said Jones, for the use and benefit of the creditors who had joined in said contract. Jones continued as trustee under said contract until about the 1st of May, 1900, when he was removed by an order of the district court of Cass county, and the plaintiff herein was appointed in his place. It appears that Jones took possession of the premises under his trusteeship, and operated the same during the farming seasons of 1895 and 1896 without default, and up to and including the delivery of the one-half of the crop for the year 1896. Jones did no plowing in the fall of 1896. On the contrary, he entirely abandoned the premises, and neither he, nor any person representing either Grover or the creditors, has been in the possession of the land since the division of the crop of 1896, or made any attempt or offer to comply with the obligations imposed by the contracts here in question. After applying all payments made by Grover from the proceeds of the crop grown in 1894, and by Jones from the proceeds of the crops grown in 1895 and 1896, there remained unpaid, when Jones relinquished possession in the fall of 1896, upon the gross indebtedness of $15,875.13, which Grover had assumed, the sum of $13,346.63. There is no dispute as to the amounts paid by Grover and Jones, but a dispute exists as to the manner of application. Plaintiff contends that all the payments from the crops grown should be credited on the land contracts, and that no part of the same should be applied on that portion of the debt which originally constituted the personal property indebtedness. If the payments made were so applied, then there was due upon the land contracts when Jones relinquished possession the sum of $9,853.66, and upon the personal property indebtedness the sum of $3,492.97. After the abandonment by Jones in the fall of 1896, the vendor, Addison Leech, Sr., took possession of the premises, and continued in possession until December 1, 1898, when he conveyed the title to his two sons, W. F. Leech and Addison Leech, Jr., the defendants herein, who have since possessed and farmed said premises. In June, 1900, the plaintiff instituted this action, in which, after alleging the facts which constitute his cause of action, he prays that the contracts in question be adjudged in full force and effect; that the defendants be required to surrender possession of the lands, and to account for the rents and profits and value of the use during their occupancy; that the amount due on the contracts be deter-

mined, and the rents and profits be applied thereon; that the plaintiff be permitted to sell the lands, subject to the contracts, for the benefit of the trust estate; and for such further relief as may seem just and equitable in the premises.

The question as to whether the gross indebtedness assumed by Grover when he obtained the assignments of the contracts constituted a new consideration, which he was legally obligated to pay, as a condition precedent to his right to secure deeds from the vendor, as defendants contend, or whether he was legally entitled to a conveyance of title upon paying merely the amount which the original purchasers had contracted to pay for the land alone, and not including the personal property indebtedness, is discussed at much length by counsel for both parties. This question would be an important one if we were of opinion that the facts as we find them entitled the plaintiff to the relief which he seeks. But inasmuch as we have reached the conclusion, for reasons hereinafter stated, that plaintiff must necessarily fail in his action, it is not material to a determination of this case whether the payments should have been applied as plaintiff contends, or in accordance with the views of the defendants.

The trial court found that all of the rights of G. A. Grover and all other persons in the premises under the contracts in question were voluntarily and unconditionally surrendered to the vendor, Addison Leech, Sr., on or about the 1st day of June, 1897. This finding is fully sustained. It appears from the evidence contained in the record presented to this court that in the fall of 1896, Jones had disposed of or exhausted all of the assets of the estate except the contracts here in question, and was therefore without funds or ability to proceed further with such contracts. He informed Leech of this fact and also advised the creditors of the exact situation. At his request a meeting of the creditors was called for the purpose of determining what should be done in reference to these contracts. At such meeting twenty-nine or thirty of the thirty-three creditors who were parties to the trust agreement were present in person or by representatives. Jones, the trustee, was also present. After a full consideration of the condition of the land, which was then unplowed, and its probable value, it was determined without dissent that their interest under the contracts was of little or no value, and the creditors emphatically declined to advance funds to carry out the contracts, and directed Jones to proceed no further thereunder. One of the creditors suggested at the conference that they could probably get five or six hundred dollars from the vendor for turning the land back. W. F. Leech, who was present as the agent and representative of his father, replied that they would rather give the creditors that sum, and have them go on and comply with the contracts. This, as already stated, the creditors declined and refused to do. Jones testified that he told Leech that he could not and would not

proceed with the contracts, and that this was the decision of the creditors. A number of the creditors who were present at the conference testify to the same effect, and the facts as narrated are not disputed. It is entirely clear that the vendor, Leech, was not only willing, but anxious, that the trustee should proceed and carry out the contracts. The attitude of the trustee and creditors, on the other hand, was the exact reverse. They not only failed to carry out the conditions of the contracts, but absolutely declined and refused to perform the same. Pending the negotiations between Leech and Jones and the creditors, the trustee failed and neglected to do any fall plowing in the fall of 1896, or take any steps toward producing a crop for the year 1897. Finally, and on or about the 1st day of June, 1897, Addison Leech, Sr., evidently as a last resort, accepted the surrender and abandonment so made by the trustee and creditors, and with the full knowledge and consent of Jones and the creditors, and without objection on the part of any one, and in reliance upon and induced by such abandonment and surrender, entered into possession and summer-fallowed the land in 1897, and cropped the same in the year 1898, and in December of that year transferred the same to these defendants, who have since occupied and farmed the same with the knowledge of Grover, Jones, and the creditors, and without objection on the part of any one. From the date of the abandonment by Jones, in fall of 1896, up to the comencement of this action, in June, 1900, no offer of performance or attempt to perform has been made by any person interested in the trust.

Counsel for plaintiff contend that the defense upon which the defendants rely, viz., abandonment and rescission of the contracts, was determined adversely to them in a former action, and that the judgment in said action, not having been appealed from, is conclusive as to all matters which were or might have been determined therein. This contention is based upon an apparent misconception of the legal effect of the judgment referred to. It appears that in March, 1897, Addison Leech, Sr., instituted an action to quiet title to the premises in question, in which action he made the original purchasers, Jones, Grover, and the creditors defendants. The case was tried in October, 1897. At the close of plaintiff's testimony, on motion of defendants' counsel, the court ordered a dismissal of the action. The judgment of dismissal recites on its face that it is "without prejudice to any other action." The effect of this recital in the judgment is to prevent it from operating as a bar in another suit brought on the same subject-matter. By its very terms it does not constitute a bar. See *Prondzinski* v. *Garbutt,* 10 N. D. 300, 86 N. W. Rep. 969, and cases cited. It is patent that judgment referred to does not preclude the defendants from interposing the defense here relied upon.

Do the facts, as narrated, entitle the plaintiff to a decree of specific performance, or to any relief at the hands of a court of

equity? We have little hesitation in giving a negative answer to this question. The evidence, in our opinion, establishes a voluntary and unconditional relinquishment by all of the parties to the trust of their rights under the contracts in question, and a voluntary surrender by them of the possession of the premises to the vendor. It also establishes an acceptance of the surrender of possession, and an assumption of the same by the vendor, followed by a subsequent transfer of the title by the vendor, and the creation of entirely new relations with reference to the property in question, all in reliance upon such abandonment. It stands uncontradicted that up to the present time no attempt or offer to perform the conditions of the contracts has been made by any person connected with the trust, other than that contained in the allegation of the plaintiff's complaint herein that "he is ready and willing to perform the terms and conditions of the contract." We think it can be fairly said that at no time since the abandonment by Jones, in the fall of 1896, has there been any intention on the part of any person connected with the trust to comply with the terms of the contracts; and that no such purpose exists at this time we think is also manifest. The acts both of Grover and of the present trustee evince a contrary purpose. For instance, in 1897, after Jones had abandoned the premises, Grover applied to the district court, not to obtain relief from the default made by the trustee, but to secure an order authorizing a sale of the land at auction, subject to the contracts. Such an order was procured, and an attempted sale thereunder proved abortive, for reasons which we need not narrate. In the present action the chief prayer of the plaintiff is that he "may sell said lands subject to the contracts for the benefit of the trust estate." The plainly declared purpose of Grover in 1897, and the evident intent of the plaintiff at this time, is not to excuse the default and to comply with the conditions of the contracts, but is merely to obtain judicial authority and sanction for a sale of rights and equities under the contracts, which, as we have seen, were unconditionally and voluntarily abandoned in 1896. The facts, as narrated, operate as a bar to any such relief in a court of equity.

The fact that the relinquishment was not in writing is not important. That the mutual rights and obligations of the parties to a written contract for the purchase and sale of real estate may be waived, and the contract annulled and extinguished, by parol, is well settled. It is also well settled that where a party has been grossly negligent of his rights, or has abandoned his contract, a court of equity will not extend to him the extraordinary relief afforded by specific performance. The rult as stated in *Huffman* v. *Hummer*, 18 N. J. Eq. 83 is as follows: "Where the complainant has by parol waived or discharged a contract, and the defendant by such action has entered into obligations inconsistent with its performance, it is an equity that will bar the remedy by specific performance." The cases are numerous where this wholesome

and equitable rule has been recognized and applied. *King* v. *Morford,* 1 N. J. Eq. 274; *Ryno* v. *Darby,* 20 N. J. Eq. 231. In *Dearborn* v. *Cross,* 7 Cow. 48, it was held that a court of law should, and a court of equity undoubtedly would, presume a rescission of a written contract for · the sale of land from the fact of a surrender of possession by the· vendee, and an accepttance of it by the vendor, and a subsequent sale by the vendor, as against either party who should attempt to enforce the contract. See, also, *Ballard* v. *Walker,* 3 Johns. Cas. 60; *Fleming* v. *Gilbert,* 3 Johns. 528; *Green* v. *Green,* 9 Cow. 46; *Ketchum* v. *Evertson,* 13 Johns. 359, 7 Am. Dec. 384; *Morrill* v. *Colehour,* 82 Ill. 618; *Murray* v. *Harway,* 56 N. Y. 347; *Baldwin* v. *Salter,* 8 Paige, 473 (4 L. Ed. 508); *Raffensberger* v. *Cullison,* 28 Pa. 426; *Boyce* v. *McCulloch,* 3 Watts & S. 429, 39 Am. Dec. 35; *Stevens* v. *Cooper,* 1 Johns. Ch. 425, 1 L. Ed. (1 Johns. Ch.) 196, and cases cited in note; *Stearns* v. *Hall,* 9 Cush. (Mass.) 31; *Cummings* v. *Arnold,* 3 Metc. (Mass.) 486, 37 Am. Dec. 155, and cases cited; *Goss* v. *Nugent,* 5 Barn. & A. 65; *Robinson* v. *Page,* 3 Russ. 114. The foregoing authorities wholly sustain the doctrine that a written contract may be discharged by parol, and that a court of equity will not decree specific performance in cases coming within the rule stated in *Huffman* v. *Hummer,* supra. In *Stoutenburgh* v. *Tompkins,* 9 N. J. Eq. 332, it was held that "one who has been in the enjoyment of property under an agreement, and has surrendered and abandoned it, who has betrayed the confidence existing between the parties, and has by his conduct and dealings with the defendant, and his treatment of the property, beguiled the defendant into the belief that he intended to give up all his rights and interest in the contract, comes into court with a case wholly void of equity, when he demands a specific performance."· The following rule, formulated by Mr. Justice Story in *Taylor* v. *Longworth,* 14 Pet. 172, 10 L. Ed. 405, has been received by the courts with universal approval: "If the party seeking a specific performance has been guilty of gross laches, or has been inexcusably negligent in performing the contract on his part, or if there has in the intermediate period been a material change of circumstances, affecting the rights, interests, or obligations of the parties, in all such cases courts of equity will refuse to decree specific performance, upon the plain ground that it would be inequitable and unjust." The facts of this case bring it squarely within the rule above stated. We have here a voluntary and unconditional abandonment of the contracts, and a surrender of possession of the premises, and an acceptance of the same by the vendor, followed by a subsequent transfer of title, and the establishment of new relations as to the property which are inconsistent with a performance of the contracts.

Another reason exists for denying the plaintiff the relief which he seeks. There is a well-settled principle that "a plaintiff calling

for performance after a great lapse of time must satisfy the court that he did not lie by to take advantage of fortuitous circumstances, that during the whole period he had it in contemplation to perform the contract, and that the other party expected to be called upon." *Alley* v. *Deschamps,* 13 Ves. 225; *Tiernan* v. *Roland,* 15 Pa. 429. This plaintiff has failed to do. On the contrary, it would appear that the institution of this action was prompted by a subsequent and substantial increase in the value of the land. If at this time the plaintiff were relieved from the legal consequences of the abandonment, which occurred in 1896, and the rents and profits accruing subsequent thereto were credited upon the original purchase price, as he prays, concededly there would be an equity amounting to several thousand dollars in value. But such a course would be palpably unjust and inequitable to the defendants. The value of the equities of the vendees under the contracts as they existed at the time of the abandonment was carefully considered by the creditors, who, it must be conceded, were amply able to carry out the contract, if they had so desired; and it was determined without dissent that they were of little or no value, and Jones was directed not to perform the contracts. Time has rendered that valuable which the creditors deemed valueless, and which they voluntarily abandoned. Will a court of equity, because of this fortuitous circumstance, and under the circumstances of this case, wrest the land from the defendants and give it to the plaintiff? Most certainly not. Courts of equity look with small favor upon those who seek their aid in actions prosecuted under a change of mind induced by motives such as are here manifest. *Holgate* v. *Eaton,* 116 U. S. 33, 6 Sup. Ct. 224, 29 L. Ed. 538; *O'Fallon* v. *Kennerly,* 45 Mo. 124.

For the reasons stated, the conclusions of the trial court meet our full approval, and the judgment dismissing the action is accordingly affirmed. All concur.