## C. B. FREEMAN v. A. N. McLENNAN.

CROPS, *Belong to Whom.* Crops sowed on land by a stranger to the title, and without authority or consent of the owner, belong to the owner of the soil.

*Error from Ellsworth District Court.*

AT the September Term, 1880, of the district court, *McLennan*, as plaintiff, recovered a judgment against *Freeman*, who brings the case here. The opinion contains a statement of the facts.

*Garver & Bond*, for plaintiff in error.

*Lloyd & Evans*, for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: This was an action originally brought before a justice of the peace by the defendant in error against the plaintiff in error and others, to recover $295 for damages done by trespassing cattle. The damage claimed was the destruction of certain millet hay, which McLennan purchased from John H. Smith. The land on which the millet was sowed and raised, belonged to one K. P. Grove. Smith planted and harvested the millet in 1879; while in the stack, McLennan bought it from Smith. Subsequently, Grove returned from Colorado, rented the land to Freeman, giving him by the terms of the lease the right to the crops thereon during the year 1879; Grove refused to recognize the claims of Smith or McLennan to the millet. After getting the lease of the land, Freeman turned his cattle upon it and let them run into the stacks of millet, claiming title from Grove; McLennan claimed ownership of the millet by virtue of the purchase from Smith; verdict and judgment were rendered against the plaintiff in error for $157.50 and costs, and he brings the case here. The jury returned the following special findings:

" What, if any, interest did the defendant, R. P. Freeman, sr., have in the cattle which are alleged to have committed the trespasses complained of on that 1st and 2d days of March, 1880 ?   A. None.

" What, if any, charge or control did R. P. Freeman, sr., have of said cattle, on either of said days ?   A. None.

" What, if any, interest did R. P. Freeman, jr., have in the said cattle on said days ?   A. None.

" What, if any, charge or control did R. P. Freeman, jr., have of said cattle on either of said days ?   A. None.

" What, if any, permission did John H. Smith have from K. P. Grove, the owner of the land upon which the millet in question was raised, to use the land for that purpose, before it was so used ?   A. The permission accorded to him as his recognized agent by K. P. Grove.

" Did K. P. Grove sell and and transfer to R. P. Freeman, jr., the millet in question before the Freeman cattle were taken to the Grove place ?   A. Yes.

" From whom did the plaintiff A. N. McLennan obtain any interest or claim to the millet ?   A. From John H. Smith.

" At the time of the alleged trespass by Freeman on the 1st and 2d days of March, 1880, did C. B. Freeman have a lease from Grove, the owner of the land upon which the millet was, for the use of the land from March 1st, 1880, to March 1st, 1881 ?   A. Yes, by assignment from R. P. Freeman, jr.

" Were the cattle, which are claimed to have eaten and destroyed the millet, held during the time of such eating and destroying in the vicinity of and at the stacks by herders in charge of them ?   A. Yes.

" What was the millet worth per ton about the first of March, 1880 ? A. $5.

" What amount do you allow the plaintiff as the value of the millet eaten and destroyed by the Freeman cattle ?   A. $100.

" What, if any, amount as exemplary damages ?   A. $57.50.

" Did Grove, knowing what Smith had done on his land, ratify and assent to the use of the land by Smith as it was used, and that the millet belonged to Smith ?   A. Yes.

" If the last question is answered yes, then state when and how he ratified the action of Smith, and recognized that the millet was Smith's.   A. By the appointment of Smith as his agent in charge of said land, and his admissions to Duncan and Henry on February 28, 1880."

It is alleged by plaintiff, that the special findings to the ef-

fect that Grove consented to the use of the land by Smith, and that he ratified the action of Smith in using his land, and also the general verdict, are entirely unsupported by any evidence in the case, and in this view we concur. The evidence upon these points is brief, and we recapitulate it:

"John H. Smith testified that he was acquainted with the parties to the suit, but was not acquainted with K. P. Grove; that in 1879, he put a crop of millet on Grove's farm, and harvested and stacked it on the land where it was raised; afterward he sold it to defendant in error for $147; that he had some correspondence with Grove; wrote him a letter, but did not keep a copy of it; that he got a letter from Grove in answer to one of his letters, but. the last letter he wrote he did not answer. The letter received·from Grove was as follows:

"SILVER CLIFF, COL., Dec. 23, 1878.

"JOHN H. SMITH — *Dear Sir:* Please let me know if you can prove that certain parties have taken my timber. Give me their names if you can. I cannot give you an answer now concerning the renting of my farm, as I may dispose of it. Anyway, I will be down and see you before time for renting. If I rent, I want to rent it for a long time. I will fix the house good, provided I rent for a reasonable length of time. Wish you would look out a little for my interest, and see that parties don't take away my timber. Would like to know what kind of a crop Mr. C. Corbin raised this year, as I have written him, but have received no answer. Am interested in mining at this place, and will stay here some time. Address me at this place.    Yours,   K. P. GROVE."

This is virtually all of the evidence upon which the findings have any foundation in regard to the permission to Smith to sow the millet on the land of Grove. Two witnesses, Joseph Duncan and Isaac Henry, testify that they had a conversation with K. P. Grove in February, 1880; that Grove said that Smith had millet on his farm; that he expected pay from Smith for the use of the land, and some other conversation to the like effect.

As the defendant in error bought the millet in November, 1879, he cannot claim he relied in making his purchase on any of the conversations had between such witnesses and

Grove, and therefore as such conversation was neither to Smith nor McLennan, nor any parties interested in the millet or the farm, the words then used by Grove cannot be deemed any ratification of the acts and conduct of either Smith or McLennan. While it is true, that very slight acts on the part of a landlord are sufficient to make an occupant his tenant, yet as in this case there is an entire absence of any consent, or any conduct on the part of Grove, assenting to the possession by Smith of the land for crop purposes, we think there was no evidence submitted, justifying the verdict.

It is suggested by counsel for the defendant in error, that the second letter of Smith to Grove, may have conveyed him intelligence of the planting of the millet, and of the possession by Smith of the land. If so, defendant in error should have either obtained the original, or given secondary evidence of its contents, because he was the plaintiff in the court below, and it was incumbent upon him in making out his case, to show that Smith had title to the millet before he purchased.

Counsel for defendant in error claim that they are entitled to judgment without further trial. Such is not the case.

Several of the special findings, and the general finding of the jury not being supported by any evidence, the case must be reversed, and remanded with directions to the court below to grant a new trial. Perhaps, upon another hearing, the contents of both letters from Smith to Grove may be in evidence, and sufficient testimony presented to make a case.

All the Justices concurring.