(97 N. W. Rep. 543.)

---

THOMAS WADGE v. ANNOND KITTLESON.

Opinion filed November 30, 1903.

**Estoppel to Claim Ownership of Land.**

1. Defendant entered into a contract in writing for the purchase of land from the Grand Forks Security Improvement Company on the crop-payment plan. Later defendant assigned said contract to M. & D. by a written assignment indorsed thereon, absolute in form, but as security only. Subsequently defendant and plaintiff orally entered into a contract by which defendant sold the land to plaintiff for a consideration agreed upon—that plaintiff should pay certain debts of defendant, including that of M. & D. Defendant told M. & D. in plaintiff's presence that he had sold the land to plaintiff and that plaintiff would pay them, and that they should transfer the contract to plaintiff. Plaintiff paid M. & D., and they assigned the contract to plaintiff. Plaintiff presented the contract, duly assigned, to the Grand Forks Security Improvement Company, pursuant to the contract with defendant, paid the unpaid purchase money, and received a deed for the land, and placed it on record. Plaintiff for two years thereafter leased the land to defendant in writing, and in such lease plaintiff was described as the owner of the land. Under these facts, and others stated in the opinion, it is *held* that defendant is estopped to claim ownership of the land.

**Specific Performance, Verbal Assignment of Contract of Sale.**

2. Under an answer claiming relief in the nature of specific performance, a court of equity will not grant such relief in cases where the party claiming the relief has abandoned such contract, or directed it by parol authority to be by another assigned, and the assignment is executed in writing by such other person, and his assignee has paid out money in reliance on such assignment, and taken possession of the land with the assignor's knowledge and consent.

**Written Contract of Sale May Be Annulled or Extinguished by Parol.**

3. A party to a written contract for the sale of land may waive his rights thereunder by parol, and the contract may be annulled and abandoned and extinguished by parol.

**A Trespasser on Lands Acquires No Title to Crops Sown Without Owner's Consent.**

4. A trespasser on lands of another, going thereon and seeding the same against the protest of the owner, who thereafter brings an action for the possession of such land and secures an injunction restraining the trespasser from harvesting the crop, is not entitled to a share of such crop.

Appeal from District Court, Walsh county; *Kneeshaw,* J.

Action by Thomas Wadge against Annond Kittleson. Judgment for plaintiff. Defendant appeals.

Modified.

*Spencer & Sinkler,* for appellant.

The assignment of the contract of the land in question by the defendant to McEwen & Dougherty was for security only; for the indebtedness due from him to them, and the subsequent assignment of said contract by McEwen & Dougherty to Wadge, simply transferred the security interest of McEwen & Dougherty to Wadge and created no other estate in him; and the defendant having never transferred his interest in said contract or the land described therein to Wadge in writing, nor authorized any agent in writing to do so, the taking of the deed by Wadge from the vendor in the contract, in his own name, makes him only a mortgagee, and the deed so received is only a mortgage for securing the indebtedness due Wadge from Kittleson. *O'Toole* v. *Omlie et al.,* 79 N. W. Rep. 849; *O'Dell* v. *Montrams,* 68 N. Y. 499; *Yankton B. & L. Ass'n.* v. *Dowling,* 74 N. W. Rep. 436; *Feltz* v. *Peterson,* 28 So. 829; *Murry* v. *Walker,* 31 N. Y. Ct. Ap. 401; *Brayton* v. *Jones,* 5 Wis. 117; *Niggeler* v. *Maurin,* 24 N. W. Rep. 369.

*H. A. Libby,* for respondent.

A parol agreement for the sale of lands which has been executed between the parties, is not within the statute of frauds. *Baxter v. Gay,* 14 Conn. 119; *McKenna v. Bolger,* 49 Hun. 259, 22 N. E. Rep. 1132; *Martin v. McCord,* 30 Am. Dec. 342; *Pope v. Chaffee,* 14 Rich. Eq. 69; *Larsen v. Johnson,* 47 N. W. Rep. 615; *Lucus v. Mitchell,* 10 Ky. 244; *Pooyle v. Sheehy,* 57 N. Y. 637; *Andrews v. Jones,* 10 Ala. 400; *Slatter v. Meak,* 35 Ala. 528; *LeFevre v. LeFevre,* 8 Am. Dec. 696; *Whitson v. Smith,* 15 Tex. 33; *Robb v. San Antonia St. R. R. Co.,* 18 S. W. Rep. 707; *Reedy v. Smith,* 42 Cal. 245; *Doherty v. Doe,* 33 Pac. Rep. 165; *Swenzey v. Moore,* 74 Am. Dec. 134; *Wheeler v. Frankinfall,* 78 Ill. 124; *Anderson School Tp. v. Milroy Lodge of Masons,* 29 N. E. Rep. 411; *Pomeroy v. Winship,* 7 Am. Dec. 91; *Stone v. Dennison,* 23 Am. Dec. 654; *Nutting v. McCutcheon,* 5 Minn. 382; *Bird v. Jacobus,* 84 N. W. Rep. 1062; *Fideler v. Norton,* 30 N. W. Rep. 128; *DeHierapolis v. Wright,* 60 N. Y. St. 417; *Cameron v. Austin,* 27 N. W. Rep. 622.

Where a person who holds a contract of purchase of land stands by and sees another purchase the same land from his vendor, and fails to object, he will be estopped from claiming that the second purchaser bought for his benefit. *Baehr v. Wolf,* 59 Ill. 470.

In this case Kittleson not only stood by when Wadge bought the land, and secured a transfer of the contract from McEwen & Dougherty, but he bargained with Wadge to do this, and the whole transaction was upon his instance and request, and under his personal supervision and direction, and every act done by Wadge was in direct pursuance of the agreement with Kittleson. After the contract had been fully performed, Kittleson worked the land as Wadge's tenant for two years without objection. See also *Mellor v. Valentine,* 3 Colo. 255; *Doan v. Mayzey,* 33 Ill. 227; *Martin v. Me. Cen. R. R. Co.,* 83 Me. 105, 21 Atl. Rep. 740; *Stores v. Barker,* 10 Am. Dec. 316.

Kittleson has no interest in the crop. He was a trespasser on the land, and did his work in putting the crop in with full knowledge of all the facts, after he had been forbidden to do so, and against the express commands of the owner. Crops sown on land by a stranger to the title without authority or consent of the owner, belong to the owner of the soil. *Freeman v. McLenon,* 26 Kan. 151; *Simpkins v. Rodgers,* 15 Ill. 397; *Crotty v. Collins,* 13 Ill. 567;

*Thomas* v. *Moody,* 11 Me. 139; *Lindsay* v. *Winona R. R. Co.,* 43 Am. Rep. 228; *Brothers* v. *Hurdle,* 10 N. C. 490; *Murphy* v. *Sioux City R. R. Co.,* 55 Iowa 473, 8 N. W. Rep. 320; *Straubble* v. *Trustees,* 78 Ky. 481.

MORGAN, J.    The controversy in this case arises over the ownership and the right to the use and possession of the southwest quarter of section 24, township 157, range 58, in Walsh county, N. D.    The plaintiff claims in his complaint to be the absolute owner thereof, and asks to have the title quieted in himself, and defendant's interference with his possession permanently enjoined.    Defendant claims, in his answer, to be the equitable owner of said lands, and claims that he has been in the continuous possession thereof since 1897; that he purchased said land from the Security Improvement Company, of Grand Forks, in 1897, and received from said company a contract of sale, under which he was to secure full title to said land upon payment to it of $850 from the crops raised on the land; that in January, 1898, he was indebted to McEwen & Dougherty, of Park River, and assigned said contract of sale to said firm as security for the payment of said indebtedness; that defendant was indebted to plaintiff and his partner in November, 1899, in the sum of about $300, and plaintiff about said time requested that defendant authorize McEwen & Dougherty to assign said contract of sale to plaintiff, and that plaintiff would thereupon pay said McEwen & Dougherty's debt, and hold said contract as security for the payment of plaintiff's debt, as well as the amount paid to McEwen & Dougherty to secure the assignment of the contract to plaintiff; that plaintiff paid McEwen & Dougherty what was their due, and received from them the assignment of the contract of sale; that plaintiff thereafter wrongfully presented said assignment to the Security Improvement Company, at Grand Forks, N. D., paid the amount due on said contract, and demanded that a deed be executed and delivered to him, by said company; that said company issued such deed to him, which was duly recorded in the office of the register of deeds of Walsh county; that plaintiff procured said deed without authority or right to do so, and without defendant's authority or knowledge. The relief demanded by defendant is for an accounting; that plaintiff be adjudged to have received such deed in trust for defendant, and as security for the amounts owed by defendant to plaintiff; that, "upon payment to plaintiff by defendant of the amount found due to plaintiff, that plaintiff be compelled to deed the land in dispute

in this action, by a special warranty deed, * * * to this defendant." The trial resulted in findings and a decree in favor of the plaintiff, so far as the ownership of the land was concerned. Defendant appeals, and requests a review of the entire case, under section 5630, Rev. Codes 1899.

Unless an accounting must be made between the parties, the issues are: (1) Was the transaction of November 1, 1899, between plaintiff and defendant, whereby the contract of sale was assigned by McEwen & Dougherty to plaintiff, a security, or an absolute assignment? (2) If not a security assignment, has the defendant parted with, conveyed, or abandoned his interest in the contract of sale?

Upon the first question, it is not difficult to reach a conclusion, based on evidence that preponderates in plaintiff's favor, and is thoroughly convincing, that defendant's version of the affair is not the true one. The facts out of which the differences between the parties arose are as follows: On the 3d day of June, 1897, the defendant entered into a contract for the purchase of the land in suit from the Grand Forks Security Improvement Company, on the crop-payment plan of purchase. Possession of the premises was given him by said contract, and he went into what is deemed in law actual possession thereof, and in 1898 broke forty-three acres, and cropped this and the eighty acres of land already broken thereon when he purchased it. He also cultivated this land and cropped it in 1899. There were no buildings on the land. In January, 1898, the defendant was in debt, and owed the firm of McEwen & Dougherty $741. He owed the plaintiff and his partner about $300. He also owed the Security Improvement Company $752.25, the unpaid balance on the purchase price of the land; being $850. He owed other debts, also. At this time defendant assigned to McEwen & Dougherty the land contract received from the Security Improvement Company, by an assignment absolute in form, indorsed on said contract. At the same time McEwen & Dougherty gave defendant a memorandum acknowledging that such assignment was for security purposes only. Later, and in the spring or summer of 1899, the plaintiff met the defendant to settle a seed-lien transaction, and to get a lien on the crop; and, during a conversation then had, defendant proposed that the plaintiff buy the land in question from him. The plaintiff, after they had talked over the price, said that he would see about it later. The defendant also

requested him later in the summer to buy it, and again in the fall. At the conversation had in the fall about selling the farm, the plaintiff made him an offer to buy the farm. He offered to buy it on the following terms: Defendant was to turn over to plaintiff 200 bushels of wheat; plaintiff was to pay the McEwen & Dougherty indebtedness; the indebtedness due plaintiff and Wadge & Johnson was to be satisfied; plaintiff was to pay the Security Improvement Company the unpaid purchase money; and defendant was to transfer to plaintiff all his right, title, and interest in the farm. Defendant accepted the offer. Plaintiff and defendant then immediately went into the office of Wadge & Johnson, and their claim was found to be about $300. They then went to the office of McEwen & Dougherty to find out the amount of their claim. Upon arriving there, the defendant said: "McEwen, I sold my farm to Mr. Wadge, and he will take up your indebtedness, and you will transfer the contract to him." Then they went to the elevator to find out about the amount of wheat that the defendant had stored there. It was found to be 200 bushels, and the defendant then and there ordered the elevator agent to turn over such wheat to plaintiff, and it was then turned over to plaintiff. During these negotiations the defendant had told the plaintiff that his contract for the purchase of the land from the Security Improvement Company had been assigned to McEwen & Dougherty, and that plaintiff should take the contract, pay the indebtedness, and get a deed for the land. Immediately thereafter plaintiff paid McEwen & Dougherty, received the notes from them, and marked them "Paid," as requested by defendant, and left them in the safe in the office of Wadge & Johnson, and informed defendant that the notes were paid, and marked "Paid," and that he could get them by calling at the office of Wadge & Johnson. Plaintiff paid his partner, Johnson, his share of the defendant's indebtedness to the firm. McEwen & Dougherty assigned to plaintiff all their right, title, and interest to the contract on November 1, 1899. Plaintiff immediately sent the same to the Security Improvement Company at Grand Forks, N. D., and that company conveyed the land by deed to plaintiff on November 8th. The deed was recorded at once in the register of deed's office at Grafton, N. D. The plaintiff thereafter informed defendant that the deed was recorded, and that the notes were at Wadge & Johnson's office, marked "Paid." Later defendant leased the land from

the plaintiff, and cropped it for him in the year 1900. In 1901 a written lease was entered into between these parties for the farming of the land in 1901 by the defendant. In this lease, signed by defendant, the plaintiff was therein expressly acknowledged and described as the owner of the land. The crop of 1900 was divided between the parties in accordance with the terms of the lease, without anything being said that defendant claimed the land. The first time that defendant intimated to plaintiff that he still claimed to own the land was at the time that the crop of 1901 was being divided. Defendant then said that he had changed his mind, and claimed to own the land. This is the plaintiff's testimony, which defendant denies, and says that this was the first time that plaintiff made claims to the land. But we are convinced that defendant is mistaken as to this conversation, and that this was the first intimation given by defendant to plaintiff that he intended to claim ownership of the land. The manner of the dealings between them shows to us that up to this time nothing had transpired to indicate that defendant had any intention of repudiating the transaction of November 1, 1899. For over two years defendant and plaintiff dealt in reference to this land on the basis of absolute ownership in the plaintiff. On several occasions defendant had admitted in direct and indirect statements that he had sold the land to the plaintiff. He so admitted in a subsequent conversation with Mc-Ewen. The written lease of February 21, 1901, admits plaintiff's ownership in express words. Defendant's explanation of making the leases of 1900 and 1901 is not satisfactory. If believed, it shows that he entered into the transaction upon—to say the least—unworthy motives; that is, to conceal this property from creditors. The circumstances under which they were given indicate to us an express recognition of plaintiff's absolute ownership of the land. The circumstances show a motive for an absolute sale. Defendant was being threatened with proceedings to enforce payment of the McEwen & Dougherty notes, secured by the contract. He was indebted to others. The land was not valued at more than $1,500. He received what was equivalent to $1,800 for it. Land values have since rapidly increased, so that it is now worth much more. If plaintiff took the land as security, he was paying out nearly $1,700, including taxes, to secure himself, personally, payment of about $150. Another strong circumstance showing that a sale ab-

solute was intended is that defendant nowhere during the negotiations stated that it was to be as security only. When he assigned the contract to McEwen & Dougherty he protected himself from all question as to the character of the assignment by taking another writing from the assignees, admitting it to be security only. It is not explained why equal precautions should not have been taken as to this assignment.

The rule is well settled that, to show a deed or other instrument absolute on its face to have been intended only as security, the evidence must be clear, convincing, and satisfactory. *Jasper* v. *Hazen*, 4 N. D. 1, 58 N. W. 454, 23 L. R. A. 58; *McGuin* v. *Lee*, 10 N. D. 160, 86 N. W. 714; *Sargent* v. *Cooley*, 12 N. D. 1, 94 N. W. 576; *Forester* v. *Van Auken*, 12 N. D. —, 96 N. W. 301. Under the rule stated and the cases above cited, we have no hesitation in saying that the transaction was intended as an absolute sale, and not as a security transaction.

Defendant's main contention, however, is that he has never parted with the title to the contract in question, nor with equitable ownership of the land conveyed thereby. His position is that the assignment to McEwen & Dougherty was admittedly as security only, although in form absolute, and that the assignment from McEwen & Dougherty to plaintiff could convey no greater interest in the contract or to the land than they had—a mortgage or security interest. In other words, his contention is that he never transferred his interest in the contract or land absolutely, but only to secure a debt of his, and that the transfer by him was oral, and invalid, under section 3887, Rev. Codes 1899; that, if McEwen & Dougherty be considered as defendant's agents to assign the contract, their authority must be in writing, under the statute. As shown heretofore, the intention of the parties at the time that defendant requested McEwen & Dougherty to assign the contract to plaintiff was that such assignment should be made, as evidencing the sale to plaintiff. The assignment to McEwen & Dougherty indorsed on the contract, was absolute in form, and purported to assign the contract without conditions. The defendant made no claim at the time that he told McEwen & Dougherty to assign the contract that it was as security only. For two years thereafter he made no claim to own the land. Plaintiff paid out large sums of money on the understanding that he was getting an absolute title to the

land. All these things were done in reliance on defendant's agreement to sell the land to plaintiff, and directing that the assignment of the contract be made to plaintiff by those having possession of it under an assignment positive in its terms. The plaintiff now asks that a court of equity relieve him from the effect of his express direction, and that he be allowed to specifically perform the contract by paying the amount paid by plaintiff. This would not be equitable, so far as the plaintiff is concerned, and would be making a new contract for the parties. Their contract was a sale. Plaintiff paid his money out for a conveyance of the title absolutely and did not make a loan. Defendant's indebtedness was canceled and paid by plaintiff on the strength of receiving a conveyance without conditions. In *Baehr* v. *Wolf et al.,* 59 Ill. 470, it was said: "So far as the evidence discloses, Wolf had abandoned his contract, and Carpenter could lawfully sell the land to appellant or anyone else. Wolf stood by and saw the appellant making the contract with Carpenter in his own name and for his own use, and paying out his own money therefor; and he cannot now be heard to say that the appellant was purchasing it as his trustee, and, after the lapse of years, come into a court of equity and say that he will take unto himself the profits of the transaction. When Wolf saw the appellant purchasing the land of Carpenter with his own money and to his own use, he ought then to have asserted his rights, if he had any; but, having remained silent, for so many years, he will now be estopped to deny that the purchase was rightfully made by the appellant to his own use." See, also, *Storrs* v. *Barker,* 10 Am. Dec. 316; *Martin* v. *Maine Central Ry. Co.,* 83 Me. 105, 21 Atl. 740; *Mellor* v. *Valentine,* 3 Colo. 255; 11 Enc. of Law (2d Ed.) p. 429, and cases cited.

However, we need not rest the decision on principles of estoppel. The relief asked in the answer is that plaintiff be compelled to specifically perform the contract of sale, and convey to defendant the title which he acquired from the vendor in the contract, the Grand Forks Security Improvement Company. Whatever defendant's rights are, they must be based upon that contract. Under the contract, he became the equitable owner of the land. The legal title remained in the vendor, as security for the purchase price. *Nearing* v. *Coop,* 6 N. D. 345, 70 N. W. 1044. This court has recently held that, under a contract such as the one in suit, the

parties may waive its terms by parol, or annul or extinguish its. provisions, without writing.  In *Mahon* v. *Leech,* 11 N. D. 181, 90· N. W. 807, it was said: "The fact that the relinquishment was not in writing is not important.  That the mutual rights and obliga- tions of the parties to a written contract for the purchase and sale of real estate may be waived, and the contract annulled and extin- guished by parol, is well settled.  It is also well settled that where a party has been grossly negligent of his rights, or has abandoned his contract, a court of equity will not extend to him the extra- ordinary relief afforded by specific performance."  The authorities. are collected in that case, and liberally quoted from; and we need say no more than that that case is parallel with this, and decisive of it.  In fact, this case presents stronger reasons for the enforce- ment of equitable principles than the Mahon case.  In that case the vendees, who abandoned the contract, received no benefits by virtue of such abandonment.  In this case defendant made a most advantageous surrender of the contract.  By surrendering the contract to plaintiff, he realized a large profit on his purchase, not counting his possession of the place for two years.  What is said in *Mahon* v. *Leech, supra,* is peculiarly pertinent to this case, as referring to the rise in the value of the land: "Time has rendered that valuable which the creditors deemed valueless, and which they voluntarily abandoned.  Will a court of equity, because of this fortuitous circumstance, and under the circumstances of this case,. wrest the land from the defendants and give it to the plaintiff?· Certainly not.  Courts of equity look with small favor upon those who seek their aid in actions prosecuted under a change of mind induced by motives such as are here manifest."

The trial court awarded to the defendant two-thirds of the net proceeds of the crop of 1902, and the balance to the plaintiff.  Plain-- tiff had been in the possession and control of the land since 1899. Defendant's relation to the land during that time was solely what he derived as tenant of the plaintiff, whom defendant acknowledged as owner.  In the spring of 1902 defendant took possession and control of the land, and, without warrant, put in the crop.  Plain-- tiff seasonably and promptly notified the defendant of what he· before knew—that he had no right to the possession of the land. Defendant seeded the land with great haste, and against plaintiff's. protest.  He showed a disposition to resort to force to thwart plain- tiff's attempt to control the cropping of the land.  He had no rights.

there. He was nothing more or less than a willful trespasser. We see nothing in the record to show that he was acting in good faith. Such a lawless attempt to control another's rightful possession should not be rewarded by giving one the fruits of a trespass made in bad faith. Defendant amicably allowed plaintiff his share of the crop of 1900. The plaintiff had the same right to the land in 1902 as he had in 1900 and in 1901. Because the defendant, without license and by threatened force, cropped the land in 1902, does not give him any legal right to the crop. He acted without right or authority and at his peril, and must suffer the consequences. The crops belong to the owner of the land, unless some right thereto is given to a tenant or cropper by authority or assent of the owner. In this case plaintiff forbade defendant to crop the land, and thereafter brought this action, and, in connection with it, secured an injunction against the defendant's harvesting the crop; alleging defendant's insolvency, among other grounds for asking equitable relief. As bearing upon the right of the plaintiff to the crop under such circumstances, see *McLean* v. *Bovee,* 24 Wis. 295, 1 Am. Rep. 185; *Rowell* v. *Klein,* 44 Ind. 290, 15 Am. Rep. 235; *McGinnis* v. *Fernandez* (Ill.) 26 N. E. 109, 25 Am. St. Rep. 348; *Carlisle* v. *Killebrew,* 89 Ala. 329, 6 South. 756, 6 L. R. A. 617; *Crotty* v. *Collins,* 13 Ill. 567; *Freeman* v. *McLennan,* 26 Kan. 151.

The district court is directed to modify its judgment so far as the defendant is therein given judgment for the sum of $575.23, and to award the whole of the crop of 1902 to plaintiff. Plaintiff will recover costs in district court and in this court. In all other respects, the judgment is affirmed. All concur.