## FREE v. LITTLE et al.

No. 1673. Decided January 3, 1907 (88 Pac. 407).

1. SPECIFIC PERFORMANCE—PARTIES AGAINST WHOM PERFORMANCE MAY BE ENFORCED. Under Revised Statutes 1898, section 2826, providing that one-third in value of all estates in real property possessed by a husband at any time during the marriage, and to which the wife had made no relinquishment, shall be set apart as hers in fee simple if she survive him, where a husband contracted to sell land, and the purchaser knew that the vendor was married, and there was no fraud or concealment, the contract was not enforceable against the wife after the husband's death. [1]

2. SAME. Revised Statutes 1898, section 2826, provides that one-third in value of all the estates in real property possessed by a husband at any time during the marriage, and to which the wife had made no relinquishment of her rights, shall be set apart as her property in fee simple if she survive him. A husband contracted to sell a parcel of land, and on distribution of the real estate, after his death the wife received, as her third, land other than that in question, the children receiving the remaining two-thirds of the land, and thereafter the purchaser in the contract sued for specific perform-

---

[1] Kelsy v. Crowther, 7 Utah 519, 27 Pac. 695.

31 Utah—29

ance, the wife being made a party merely as guardian of the children. *Held*, that the transaction involved in the distribution amounted to an exchange by the wife of her interest in the particular land for an equal interest in another piece, and the children were subrogated to the legal rights of the wife, and entitled to defend on the ground that specific performance could not, under the statute, be enforced against the wife.

3. SAME—EQUITIES OF PLAINTIFF. The owner of land agreed to sell it to the tenant thereof for $7,000, the tenant to remain in possession at a rental of one dollar per month. After the death of the vendor, the tenant endeavored to purchase the property from the executor, independently of the contract, but the transaction fell through, and when the guardian of the vendor's children threatened to dispossess the purchaser, she entered into a new contract with him, and paid an increased rent for three years, and she permitted the estate to be distributed without making any claim under the writing except a claim to the executor at the time of the attempted purchase. The purchaser permitted the children to pay special assessments. The agreement between the vendor and purchaser amounted to no more than a mere option on the part of the purchaser. *Held*, that there were no equities in favor of the purchaser warranting a judgment in her favor for specific performance.

4. SAME—ISSUES AND PROOF. Where the purchaser in a contract for the sale of land sued on the contract for specific performance, he could not recover on the theory that his right was that of an equitable owner to redeem the premises.

5. VENDOR AND PURCHASER—REDEMPTION BY PURCHASER. Where the purchaser in a contract for the sale of land, who was in possession of the premises, sued to redeem, as an equitable owner, she should be required to pay all taxes which the holder of the legal title was compelled to pay to protect the same.

6. SPECIFIC PERFORMANCE—CONDITIONS PRECEDENT. Revised Statutes 1898, sections 3935-3940, in relation to the administration of estates of decedents, makes provision for a decree of specific performance against an executor or administrator on a contract for the sale of land by the decedent, and section 3938 provides that, if the right of petitioner is found to be doubtful, the court must dismiss the petition without prejudice, and that petitioner may, within six months thereafter, sue to enforce specific performance. *Held* that, where the purchaser in a contract for the sale of land knew of the death of the vendor, and of the administration of his estate, but failed to present any petition under the statute before the closing ot the administration, he could not thereafter sue for specific performance. and this though, when the estate was closed, the purchaser's option had not expired.

APPEAL from District Court, Third District; W. C. Hall, Judge.

Suit by Susie M. Free against Fannie Maria Little and others. From a decree in favor of plaintiff, defendants appeal.

REVERSED AND REMANDED, WITH DIRECTIONS TO DISMISS THE ACTION.

*Stewart & Stewart* for appellant.

*Hurd & Wedgwood* for respondent.

FRICK, J.

This is an action for specific performance based upon a written option or agreement. The plaintiff (hereinafter called respondent), in her complaint, in substance alleges: That on the 6th day of January, 1898, James T. Little was the owner in fee of certain real estate in Salt Lake City, Utah, describing it. That said Little died on the 20th day of February, 1898, leaving a last will and testament, and that the defendants (hereafter styled appellants) are now the owners of the property described. That respondent within the time mentioned in the writing, offered to pay the appellants the sum of money mentioned in the said writing as the purchase price of the real estate so described, and demanded a conveyance to her of said property. That Alice S. Little, one of the appellants, on the 22d day of August, 1902, was duly appointed the general guardian of the other appellants, who are minors. There are no equities alleged in the complaint, and the same is based entirely upon the following agreement, to wit:

"Salt Lake City, Utah, Jan. 6th, 1898.

"On or before five years I agree to sell to Susie M. Free [here follows a description of the property] with all the improvements on part of said lot, for the sum of seven thousand dollars, Susie M. Free to accept terms of lease given to Samuel Cooper. See records. Susie M. Free to remain

in possession of said property at a rental of one dollar per month. (See Receipt.) In case of my death my legal representatives are to carry out this my agreement and sell to Susie M. Free at price mentioned.

"[Signed]    J. T. Little.

"Attest:  James M. Smith."

Upon the allegations contained in the complaint, based upon the writing set forth above, respondent prayed for specific performance of said agreement, and asked that the appellants be required to execute a deed of conveyance for said property for said sum of $7,000. A general demurrer was interposed by appellants which was overruled, and thereafter they filed their joint answer, in substance as follows: They admitted that James T. Little was, at the time of his death, the owner in fee of the real estate described, and that he died as stated in the complaint, leaving a last will, and admitted that the appellants refused to convey said property, and that Alice S. Little was duly appointed and is the general guardian of the other appellants, and denied all other allegations. As affirmative matter they alleged, in substance, that the last will of James T. Little was duly admitted to probate and that Le Grand Young was on the 19th day of March, 1898, duly appointed executor of said will; that said Young duly administered upon said estate, and that after he had fully administered thereon and had closed the same, he was on the 25th day of October, 1900, duly discharged; that due notice to creditors of said estate had been given; that respondent, although residing in Salt Lake City during all the time while said estate was in process of administration, and having notice thereof, and knowing that the same was to be, and was, distributed, made or presented no claim against said estate, and made no claim under such writing; that the final report of said executor was made and presented on November 23, 1899, to the court; that thereupon the court ordered distribution thereof and the same was duly distributed, one-third in value of the real estate to the appellant Alice S. Little, as widow of said deceased, and the remaining two-thirds to the other appellants

as his children and heirs; that said Alice S. Little as the wife and widow of said James T. Little had an inchoate right to one-third in value of the real estate possessed by her husband, which was distributed to her as aforesaid; that appellants paid large sums of money in taxes on said property since the distribution thereof with the knowledge and consent of respondent; that by reason of permitting appellants to make improvements and by not making any claim of any kind as provided by the statutes of this state, referring to the several sections by number, respondent is barred from any right to or claim upon said real estate.

Upon substantially the foregoing issues a trial was had at which the evidence tended to establish the following facts: Respondent produced the writing above set forth and the same was admitted in evidence, and also proved that respondent had paid one dollar as rent to James T. Little, and in addition thereto sixty dollars to apply on the purchase price of said property, to said Little during his lifetime. No other payments were shown. That respondent went into possession of the property in 1894 or 1895, and remained in possession since that time. Further, that an offer to pay the 7,000 was duly made in writing and served on Alice S. Little as the guardian of said minor appellants on January 2, 1903, and a deed demanded from her as such guardian for said property. It further appeared from the evidence that during the year 1900, and before the final distribution of the estate and the discharge of the executor, respondent made application to him to purchase the property in question. That a price of $7,000 was agreed upon, and that the executor, at the request of respondent, made application to the court for leave to sell and convey, which leave was granted by the court. That respondent wanted to pay part of the purchase price in cash and part in other property, which property the executor was unwilling to accept, and the deal fell through. That after the estate was distributed, in 1900, Mr. Glenn Miller was appointed guardian for the minor appellants, after which he insisted on respondent paying rent or quit the possession of the premises, no-

tice to that effect being given. That respondent claimed
that she ought not to be compelled to pay rent, but Mr. Miller refused to recognize her claim, telling her to establish
any right or claim she might have in the courts. That from
the latter part of the year 1900 up to the time the offer to
buy as aforesaid was made, the respondent paid twenty-five
dollars per month rent for the portion of the premises occupied by her to Mr. Miller as guardian, and, after his discharge, to the appellant Alice S. Little, who succeeded Mr.
Miller as guardian. But neither the executor nor Mr. Miller nor Alice S. Little ever recognized any claim or right
of respondent in or to said property. That the executor
permitted respondent to remain in possession thereof during
the time he acted as such, because he could find no other
tenants. That before distribution, general taxes amounting
to $668.67 were paid by appellants, and after distribution
the minor appellants paid such taxes amounting to $736.17
and also the sum of $1,072.50 as special paving taxes assessed against the premises in question. That neither of the
appellants ever had any notice or knowledge of respondent's
claim until served with the notice demanding a conveyance.
There was some evidence in respect to the ownership of the
property prior to the agreement sued on, and a sale thereof
under trust deed given by respondent, but as there is nothing
in respect to these matters in the pleadings or findings, they
become immaterial for the purposes of this decision. Upon
substantially the foregoing facts the court found in favor
of respondent, basing the findings upon the writing set forth,
and entered a decree requiring appellants to execute a deed
of conveyance to the property upon the payment of $7,000
by respondent. From the findings and decree this appeal
is prosecuted.

Appellants have assigned a large number of errors, but
the view we take of the case does not require a consideration
of all of them. The whole case can be reviewed by condensing the errors assigned into one, viz., error of the court in
decreeing that respondent is entitled to specific performance
of the writing introduced in evidence and in requiring a

conveyance of the real estate described therein to be made by appellants to respondent. In this view it becomes unimportant to review in detail the findings of fact to determine whether or not they are supported by the weight of the evidence. It may be said that all of the findings, except that respondent took and continued in possession of the premises in question pursuant to the writing under which she claimed in this action, find some support in the evidence. That part of the finding, however, not only is not supported by the evidence, but the evidence both upon her part and on the part of the appellants is directly to the contrary. As the whole case must be determined as a matter of law in the light of the uncontroverted facts, we shall not consider the findings further except when necessary or material upon the questions of law that may arise. The question therefore is, can the judgment in this case be upheld in view of the uncontroverted facts and the law and the principles of equity applicable thereto? As a preliminary observation it may be stated that specific performance is not to be granted as a matter of course although a contract otherwise enforceable may exist. The right to specific performance depends, not upon hard and fast rules according to which all cases are to be decided; but each case is dependent upon its own peculiar facts and circumstances. While the right is to be governed by general rules and principles of equity, each case, nevertheless, must be determined upon its own inherent equities. These principles are well and tersely stated in 3 Page on Contracts, section 1624. The subject is learnedly and fully discussed in Pomeroy on Specific Performance, sections 35 to 46.

The complaint alleges, the answer admits, and the court finds, that James T. Little was the owner in fee of the premises at the time he entered into the writing involved in this case, and that he was the owner at the time of his death. It is further uncontroverted that he was a married man and that Alice S. Little was his wife and the other appellants his children and heirs. The record further discloses, without controversy, that his wife claimed and was awarded and had

distributed to her the widow's share of the real estate owned by him, including the premises in question in this action, in accordance with the provisions of section 2826, Revised Statutes 1898. It also appears that both respondent and her husband were well acquainted with James T. Little in his lifetime for many years, and knew that he was a married man before and at the time the writing was executed and that his wife survived him. In the answer these facts are substantially set forth as a defense to the claim for specific performance. It is, however, contended, by respondent that Alice S. Little received her one-third share out of other portions of her husband's real estate; that she is not made a party to this action personally, but as guardian merely, and that, therefore, the facts last above stated present no defense. Is this contention sound? We think not. When the writing in question was executed, as well as when this action was commenced and the decree entered, section 2826, giving the wife one-third of the husband's interest in real estate, whether legal or equitable, possessed by him during the marriage, was in full force and effect. This one-third interest she holds as an inchoate right during the life of the husband, and upon his death it passes to her in fee simple. The respondent, in her complaint, alleges that while James T. Little died testate he made no specific devise of the real estate in question. This fact was likewise not controverted on the trial. Alice S. Little, the wife, therefore, claiming under the statutes, and no specific devise having been made of this real estate, she and her children, immediately upon the death of the husband and father, under the statutes of this state, became vested with the legal title as tenants in common; the children as heirs holding the title subject only to the claim of the creditors of the father, while the wife, in view of section 2826, took her interest in fee simple discharged from all such claims. The husband could not affect the rights of the wife either by an agreement to sell, or by a conveyance made by him alone. The wife and the children, in legal effect, thus were and remained tenants in common, she holding a one-third undivided inter-

est and the children the undivided remainder until such time
as the court made distribution, which, in legal effect, might
or might not amount to a legal partition, depending on the
fact as to whether the respective shares were distributed sep-
arately or in undivided interests. The court, therefore, dis-
tributed the real estate of James T. Little, as appears from
the record in this case, to the wife, with her consent, a one-
third interest belonging to her, and distributed to the chil-
dren the interests belonging to them. The premises in ques-
tion were distributed to the children as tenants in common.
The wife, therefore, by the decree of distribution, released
her interest in this particular real estate in exchange for
other portions of the real estate owned by her husband. She,
however, obtained one-third of the real estate left by her
husband, including the premises in question. The whole
transaction involved in the distribution, therefore, in legal
effect, amounted to an exchange by the wife of her interest
in this particular parcel for an equal interest in some other
piece of land. The children were thus subrogated to all
of her legal rights and took precisely the interest she had,
and they stand in her shoes, so to speak, in respect to this
particular piece of real estate. Could it be contended that,
when the husband sold or conveyed lands without the con-
sent of his wife, and the wife had afterwards claimed her
interest and received it, the vendee of the husband could
claim specific performance of the entire land against either
the grantee or the donee of the wife? Moreover, could any
one reasonably contend that such grantee could not set up
the defense that the husband simply attempted to sell what
he could not sell, and that such grantee or donee claimed
from the true owner of the fee, the wife? Would not an
exchange of property stand in the same legal position?
These children, therefore, in legal effect, simply effected an
exchange with their mother, and we think they had the legal
right to interpose any defense to protect their title that the
mother might have interposed, and could at least assert that
the grantor, their father, had no right or title either to sell
or convey. We think therefore, that both upon principle

and reason the appellants had the right to make the defense
that they claimed in the right of their mother, that the fa-
ther could not sell or convey her right without her consent,
and that, therefore, the respondent could not and did not
purchase the mother's interest.    While the authorities are
not in harmony respecting the right of specific perform-
ance where the husband alone agreed to sell or convey with-
out the consent of the wife, we think there is no substantial
conflict where, as in this case, it appears that the purchaser
at the time the contract was entered into knew that the ven-
dor was a married man, and where there is neither fraud,
misrepresentation, nor concealment.

To enact a law giving the wife an interest in the husband's
real estate which he can neither barter, sell, or convey with-
out her consent, would be but an idle ceremony if the courts
compelled specific performance against either the wife or
those claiming under her or against the husband if living.
The purchaser buys with full knowledge of both the interest
as fixed by law and of his vendor's legal status.    The pur-
chaser knows he cannot obtain the interest of the wife with-
out her consent, and that such interest is contingent only
during the life of the husband, and that, upon his death, it
immediately vests in the wife as a fee-simple estate.    This
court in the case of *Kelsy v. Crowther,* 7 Utah 519-522, 27
Pac. 695, recognizes the principle involved here, and it is
there held that specific performance will not be decreed in
a case where the wife did not release her dower interest. Pom-
eroy, in his excellent work on Equity Jurisprudence (3d
Ed.), vol. 6, section 834, speaking upon this subject, says:

"The buyer's right to specific performance with compensation is
subject to certain limitations; as, when it conflicts with the intervening
rights of third parties, an instance of which is the case of the right of
the wife to be protected in her dower interest.   Where the wife of the
vendor refuses to convey her inchoate dower interest in the land which
the vendor has contracted to sell, equity, in many jurisdictions, denies
specific performance with compensation against the vendor for the
deficiency, viz., the dower interest, on the ground that compulsion upon
the husband would tend to cause him to procure his wife's conveyance
of dower against her will.   For that reason the buyer must be satisfied

to take less than he contracted for by the amount of the dower interest, or abandon the contract."

In a note to the case of *Barbour v. Hickey*, 24 L. R. A. 763, the cases upon this point are collected. See, also, Pomeroy on Spec. Perf. (2 Ed.), section 461; *Hawralty v. Warren*, 18 N. J. Eq. 124, 90 Am. Dec. 613; *Lucas v. Scott*, 41 Ohio St. 636; *Graybill v. Brugh* (Va.), 17 S. E. 558, 21 L. R. A. 133, 37 Am. St. Rep. 894. We think the correct rule is well stated in the case of *Hawralty v. Warren*, supra, where, at page 128, it is said:

"The court will not order a defendant to procure a conveyance or release by his wife, or require him to furnish indemnity against her right of dower, unless in cases of clear fraud."

It is perfectly clear from the evidence in this case that both respondent and her agent, her husband, well knew that the deceased was a married man; and hence, in view of the law of this state, could not affect the rights of his wife by an attempted sale without her consent. There is absolutely no fraud, no collusion, and no concealment in this case, and therefore no equity in favor of the respondent as against the children apart from the legal rights flowing from the contract itself, and this respondent is conclusively presumed to have accepted burdened with the provisions of law in respect thereto. In view of the law as stated in the foregoing authorities, it is quite clear that an action for specific performance of the writing in question against James T. Little, if alive, could not be enforced, and the right to do so against the appellants is certainly no stronger in equity than it would be against him.

But we think there are other equitable considerations which operate against the right of respondent to have specific performance in this case. It appears that respondent was in possession of the premises in question at the time the writing was made; that she remained in possession as tenant at a nominal rental merely; that she attempted to purchase the property from the executor before the distribu-

tion of the estate, either under the terms of the writing, or
independently thereof, and that the deal fell through because
she could not, or would not, obtain the amount of the pur-
chase price satisfactory to the executor; that at her request
the court was petitioned for permission to sell, and leave to
do so was granted; that she, when the guardian of the chil-
dren threatened to dispossess her, entered into a new arrange-
ment with him and paid increased rent for the premises
in question; that she continued to do so from the latter part
of 1900 until she demanded a conveyance under the writ-
ing early in January, 1903; that she permitted the estate
to be closed and distributed without making any claim un-
der the writing except the claim that she had a writing which
was made to the executor at the time of the attempted pur-
chase in 1900, which the executor disputes; that the guard-
ion of the children disputed her claim and told her to go
into court and establish her rights, if any she had; that she
permitted the children to pay large sums of money for spec-
ial assessments which she nowhere offers to repay to them;
that the writing in no way bound her to purchase, but was
a mere option on her part, and in law amounted to no more
than a continuing offer to sell during the time specified with
the privilege upon her part of accepting it at any time. Nor
does the evidence disclose, nor does she plead or claim, that
she in any manner changed her position or did anything
during all of those years whereby a single equity arose in
her favor. Indeed no equities arose in her favor from her
possession of the premises. Such possession was neither
taken nor continued in pursuance of the written agreement.
She was in possession at the time it was made, and from
that time continued in possession as a tenant merely. More-
over, she did not insist upon her rights as tenant under the
agreement, but entered into a new arrangement with the
guardian of the children and paid increased rent, and was
willing to do this when demanded by the executor if he could
find another tenant in her place. While these facts, stand-
ing alone, may not be conclusive respecting her intention to
abandon her option right, and we do not so hold, they, to say

the least, raise a very strong inference of that intention. Contracts of this character may be waived or abandoned by implication arising from conduct as well as by an express agreement. (*Peeples v. McTeer* [S. C.], 14 S. E. 828; *Wadge v. Kittleson* [N. D.], 97 N. W. 856.) The equities flowing from possession are fully discussed in Pomeroy on Spec. Perf., sections 123, 124, from which it will appear that the possession in this case is of no importance whatever. Further, in view that only a small part of the purchase price was paid, if indeed anything was paid except enough to make the option a binding one, and in view of the foregoing facts, we can see no equities in her favor, especially since the value of the use of the premises during all of those years was far in excess of the amount paid on the agreement. This is substantially admitted from the fact that she, from the latter part of 1900, agreed to pay an increased rent of twenty-five dollars per month, with absolutely no change in the condition of the premises. And the authorities cited above clearly show that, in decreeing specific performance, all of these matters are to be considered. Pomeroy, in his work on Specific Performance, states the right of specific performance as based upon the principle that "he who seeks equity must do equity." We do not wish to be understood as holding that the mere fact that a contract is in the form of an option, or because the choice to complete a purchase is left with the vendee, specific performance will not in any case be decreed. What we hold is that in this case it would be inequitable, under all the circumstances, to decree specific performance. The principle we invoke, while stated in various ways and supported by a vast array of cases, is tersely stated by the Supreme Court of New Hampshire in *Eaton v. Eaton,* 64 N. H., at page 498, 14 Atl., at page 868, as follows:

"In general it may be said that the specific relief will be granted where it is apparent, from a view of the circumstances of the particular case, that it will subserve the ends of justice; and that it will be withheld when, from a like view, it appears that it will produce hardship, or injustice to either of the parties."

We think that all the facts and circumstances of this case are such that the relief asked for upon the writing alone should be withheld. Counsel for respondent, however, contend that the right of respondent was in the nature of a right to redeem the premises in question. The answer to this is that neither in the complaint, nor in the findings of fact is there anything of this kind even mooted. The complaint, the findings, and the decree are based entirely upon the writing in question, and nothing else; the relief was granted upon the writing, and nothing else. A party may not assert a claim upon one ground and then obtain relief upon another, without at least amending his pleadings and submitting himself to the equities arising against him out of the second ground. In this case, if respondent asked specific performance on the agreement giving her the right to redeem, she would at least be compelled to offer to pay for the special taxes, even if the general taxes were left out of consideration. In an action to redeem she would claim as an equitable owner, and, being in possession, would have to pay all taxes which the holder of the legal title was compelled to pay to protect the title. Quite true, in such a case, the equitable owner, in the absence of a special agreement, would be entitled to the usufruct of the property. In this case, therefore, if we should assume it to be an action to redeem, the decree cannot stand because entirely inequitable. The evidence discloses that appellants paid general taxes before distribution upon this property amounting to $668.67, and after distribution, $736.17, and in addition thereto, $1,072.50 special taxes, the whole of the latter being a direct benefit to the property. The general and special taxes to protect the property thus amounted to $2,477.34. Respondent paid no rent until in the latter part of 1900 and up to December, 1902, or about 26 months, amounting to $650 in all. Deduct this from the sum total of taxes special and general and it would leave a balance against her of $1,827.34 that had been expended to protect her equitable title in excess of the rent so paid. It certainly needs no extended argument or citation of authorities that the redemp-

tioner, while entitled to an accounting for the use of the
property, must likewise pay the taxes. (11 Am. and Eng.
Ency. Law [2 Ed.] 240.) If we leave out of consideration
the general taxes and limit the amount to the special taxes,
which, in contemplation of law as well as of fact, enhances
the value of the property, there would be a deficiency in fa-
vor of appellants. But, as we have pointed out, respondent
alleged, appellants admitted, and the court found that the
deceased was the owner in fee of the premises, and the de-
cree is based upon such ownership and the agreement of
sale.

But apart from the foregoing considerations, there is, as
we view the law, an insuperable obstacle in the way which
prevents us from affirming the decree in this case. Appel-
lants alleged in their answer, and it was admitted at the
trial, that respondent presented no claim of any kind against
the estate, nor did she in any way comply, or attempt to
comply, with sections 3935 to 3940, Revised Statutes 1898,
inclusive. These sections contained special provisions in re-
spect to actions for specific performance against deceased
persons. The writing in this case sought to be enforced
falls squarely within the provisions of the sections above
referred to. Waiving, therefore, the question as to whether
a claim should have been presented under sections 3860 to
3874, Revised Statutes 1898, which we think, in view of
the provisions of section 3935 et seq., was not necessary, still,
this would not relieve a party from complying with the pro-
visions of section 3935 et seq., above referred to. Those lat-
ter sections are intended to meet the very difficulties which
have arisen in this case. It is quite true that probate courts
do not, unless the power is conferred, by statute, generally
have the right or power to decree specific performance. This
is the contention of respondent's counsel, but the very an-
thority cited by them, 1 Woerner's Am. Law of Adm. sec-
tion 151, states that, when the power is conferred by stat-
ute, then it exists. If this were not so, it would be an idle
ceremony to enact statutes. When statutes are passed in
constitutional form upon nonprohibited subjects, courts have

no more right to disregard them than have laymen. Indeed, courts may construe statutes so as to harmonize different sections, or may modify words or phrases with the view to accomplish that result and make the laws conform to the true spirit and intent of the legislature, but they cannot entirely ignore them. Courts of equity have not the power to repeal statutes, or, what amounts to the same thing, refuse to recognize them. Under the citation and the statutes of this state, therefore, the probate courts are not merely courts created for the limited purpose of administering estates, as is the case in many of our sister states. We have no probate courts, as such, in this state, but all probate matters are a part of the functions, powers, and jurisdiction of the district courts, which courts have general common-law and equity powers. Quite true, the branch of probate law or practice is not thereby materially changed, but, in view of the character of our courts having probate jurisdiction, no legal or valid reason can be given why proceedings for the specific performance of contracts are not to be commenced and prosecuted as provided by the several sections above referred to. But even in those jurisdictions where probate courts are courts of special and limited power, a court of equity will not assume jurisdiction unless and until it is made to appear that the probate court is powerless to grant the relief sought. This is the general rule, and is a sound and wholesome one. (*Harriss v. Douglas,* 64 Ill. 466; *Heirs of Adams v. Adams,* 22 Vt. 50; *Freeland v. Dazy,* 25 Ill. 266 (original paging 294); *Joslin v. Wheeler,* 62 N. H. 169).

In Pomeroy on Spec. Perf., section 497, the question respecting actions for specific performance against deceased persons is fully discussed and the several states having statutes upon the subject are there given. In 1 Abb. Pro. Law, section 585 et seq., the proceeding relative to actions for specific performance against deceased persons, together with the statutes of the several states upon the subject are fully outlined and stated. In the case of *In re Corwin's Estate,* 61 Cal. 160, the Supreme Court of California, under a statute similar to section 3935, required the proceeding in the

probate court to be actually dismissed before permitting the superior court to proceed in the matter.   In *Hall v. Rice,* 64 Cal. 443, 1 Pac. 891, it is held that, after the case is dismissed in the probate court, the superior court acquires jurisdiction.   While the precise question before us now was not presented in the California cases, supra, they are negative authority that a court of equity can act only when the probate court cannot give the relief sought, and that that fact must be established in the probate court. If this were held otherwise, then we must not only ignore the provisions of section 3935, but we would repeal section 3938, where a special limitation is made upon the right to maintain an action for specific performance against decedents' estates.   If these statutes can be ignored in one case, they can be in every case, and thus the limitation provided . for in section 3938 is made without force or effect.   This case illustrates that these statutes were intended to end litigation against decedents and their estates in respect to contracts and obligations entered into and assumed by deceased persons during their lifetime before their estates are closed and distributed.   But it is asserted that in this case the option had not expired or matured when the estate was closed and distribution made.   This may be conceded, still the respondent had it within her power to ask a conveyance at any time, if she had a right to such at all.   It was within her power to mature the written offer to sell at any time. But it is argued she was not required to do so.   Grant this, still this would not relieve her from making her claim in the probate court as provided by section 3935.   If she was not willing to mature the option, the whole matter would remain suspended until its maturity by afflux of time and only a partial distribution, if any, made.   It may as well be claimed that claims for other demands against estates not due, or contingent merely, need not be presented until due or the contingency has developed into a liability.   True, in such cases the claim must be satisfied out of the assets of the estate, but so must the matter embraced within the writing in question if it is enforced at all.   Moreover, the purchase money was

31 Utah—30

unpaid in this case, and therefore when paid would legally become an asset of the estate and would have to be distributed accordingly. To wait until the estate is closed and distributed may work great .hardship in some cases. The particular property may be assigned to one heir at a valuation far in excess of the agreed purchase price when compared with the other property distributed, and this .heir ·must thus be compelled to accept his share as money when he is entitled to the real estate as his portion of' the estate. But compliance with the several sections above referred to, which were evidently enacted to prevent these complications, will mete out justice to all and injustice to none. Further, the sections above referred to leave no room for doubt that it was intended that all claims for specific performance must be commenced in the probate court during the time the estate is in process of administration. Section 3937 and section 3938 especially provide for a full hearing, and, if the case is so doubtful that specific performance cannot be had upon the petition or application, then, and then only, may an action in equity be commenced, and such action must be commenced within six months after the dismissal of the petition in the probate court. These sections likewise make ample provision for the right of possession pending the action, and thus, if the contract or right of specific performance has not matured, the whole matter may be suspended in the probate court, or in the court where the action is commenced, if it be dismissed in the probate court, until it matures and the right is adjudicated, either in the probate court or in a court of equity, if a resort to that court be found necessary.

Suppose it developed that specific performance should not be decreed, as is often the case upon a full hearing, but that the claimant had some right to damages, how are those damages to be adjusted out of the estate if it has been fully closed and final distribution has been made? If the claim stood merely as a legal one, in view that it never was presented as provided by law, it would be fully barred and no relief could be granted. Does it stand in a different light in equi-

ty under the provisions of sections 3935 to 3940, inclusive, where no petition has ever been filed or claim made in the probate court? We think not. These sections, when we view and consider them, have the same effect upon claims for specific performance in requiring such claims to be brought to the attention of the probate court pending the administration of the estate that the preceding sections have upon other or purely legal claims. As to legal claims, the right is barred absolutely unless they are presented within the time fixed by these several sections unless the cause pointed out by the statute prevented presentation. This would be so whether the claims were matured or not, contingent or fixed. In claims for specific performance, we think, and so hold, that, unless a petition is filed or claim is made in a court for specific performance within the time limited to file other claims, the claim for specific performance must be held to be waived or abandoned, unless, as in other cases, good cause is shown why it could not be filed within the time allowed for claims to be filed. Such application, however, where the applicant knew of the death of the person against whom he holds a claim and the probate of his estate, must be made before the administration of the estate is closed and distribution made. In view, therefore, that no petition was ever filed in the probate court, and the evidence being conclusive that there was and can be no legal or equitable excuse for not doing so during the pendency of the administration of the estate, the right of respondent, if she ever had a right to specific performance, must be held to have been waived and abandoned. The court, therefore, erred in entering a judgment decreeing specific performance of the writing in question.

To avoid all misconception, we state here that, when we refer to probate court in the foregoing opinion, we simply refer to that branch or department of our district courts wherein probate proceedings are conducted, there being no probate courts, as distinct courts, in this state.

The judgment is reversed, and the cause remanded to the

district court, with directions to dismiss the action, at the cost of respondent.

McCARTY, C. J., and STRAUP, J., concur.